**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

United States Courts
Southern District of Texas
FILED

JUN - 2 2014

David J. Bradley, Clerk of Court

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| In re Sealed Matter | § | NO. 2:10-mc-00022 |
| | § | |
| | § | |

## DOW JONES & COMPANY, INC.'S MOTION TO INTERVENE AND TO UNSEAL COURT RECORDS AND MEMORANDUM OF LAW IN SUPPORT

TO THE HONORABLE COURT:

Dow Jones & Company, Inc. ("Dow Jones"), the publisher of *The Wall Street Journal* and other publications, respectfully moves this Court to intervene in this case and for an order (1) unsealing and making available to the public all documents filed with or by the Court in this case, none of which appear on the electronic docket sheet available via PACER, and (2) requiring that (i) all documents related to this case be identified publicly on the electronic docket sheet and made available via PACER and (ii) if the Court determines that any document or part thereof should remain sealed or redacted, the sealing or redaction be no broader than necessary and the public description of that document be updated to reflect its general nature (*i.e.*, "Sealed Search Warrant Application"; "Sealed Order Denying Search Warrant Application") and provide as much additional information as possible.[1]

---

[1] It is well established that members of the press, such as Dow Jones, have standing to vindicate the public's rights of access to judicial records. *See, e.g.*, *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (recognizing journalist's right to intervene to assert right of access to court records); *see also Jessup v. Luther*, 227 F.3d 993, 999 (7th Cir. 2000) (when district court sealed record, "the Newspaper's presumptive right to access was implicated, and the Newspaper should have been allowed to intervene for the limited purpose of challenging the district court's order").

1

As this Court and others have recognized, open judicial proceedings and records serve vital functions in promoting public confidence and discouraging misconduct in our judicial system. *See In re Sealing & Non-Disclosure of Pen/Trap 2703(d) Orders ("In re Sealing")*, 562 F. Supp. 2d 876, 891-92 (S.D. Tex. 2008) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 556 (1980)); *Holy Land Found.*, 624 F.3d at 690 ("The principle of public access to judicial records furthers not only the interests of the outside public, but also the integrity of the judicial system itself."). "'Public confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) (quoting *United States v. Cianfrani*, 573 F.2d 835, 851 (3d Cir. 1978)).

Despite the well-documented benefits of openness, the public's right of access is regularly flouted in cases like this one, which involves an application for surveillance and cell-phone information under the Electronic Communications Privacy Act ("ECPA"). Magistrate Judge Stephen Smith estimates that tens of thousands of sealed electronic surveillance orders issued by federal district courts remain inaccessible to the public and the press—even long after the investigations underlying those orders have terminated. *See* Stephen Wm. Smith, *Reforming ECPA's Secret Docket*, 6 HARV L. & POL'S REV. 313, 321 (2012). In this case, *no* documents are available on PACER. All of the documents—presumably including the government's application and supporting affidavit, as well as the Court's order—remain under seal. In fact, the Court's electronic docket does not even acknowledge their existence.

This pervasive secrecy is particularly troubling given the widespread public interest in issues relating to government surveillance and the privacy of electronic communications. As the Court is aware, "the use of new and innovative technology to investigate, apprehend, and prosecute criminal suspects is a regular staple of media attention at local, state, and national levels." *In re Sealing*, 562 F. Supp. 2d at 885; *see also* Jennifer Valentino-DeVries and Danny Yadron, *FBI Taps Hacker Tactics to Spy on Suspects*, WALL ST. J., August 3, 2013, *available at* http://online.wsj.com/news/articles/SB10001424127887323997004578641993388259674 (last visited May 29, 2014); Jennifer Valentino-DeVries, *Judge Questions Tools that Grab Cellphone Data on Innocent People*, WALL ST. J., October 22, 2012, *available at* http://blogs.wsj.com/digits/2012/10/22/judge-questions-tools-that-grab-cellphone-data-on-innocent-people/ (last visited May 29, 2014); Julia Angwin and Scott Thurm, *Judges Weigh Phone Tracking*, WALL ST. J., November 9, 2011, *available at* http://online.wsj.com/news/articles/SB10001424052970203733504577024092345458210 (last visited May 29, 2014); Julia Angwin, *Secret Orders Target Email*, WALL ST. J., October 10, 2011, *available at* http://online.wsj.com/news/articles/SB10001424052970203476804576613284007315072 (last visited May 29, 2014); Jennifer Valentino-DeVries, *"Stingray" Phone Tracker Fuels Constitutional Clash*, WALL ST. J., September 22, 2011, *available at* http://online.wsj.com/news/articles/SB10001424053111904194604576583112723197574 (last visited May 29, 2014).

Accordingly, Dow Jones respectfully requests that the Court lift the secrecy that covers this and many other ECPA cases. Under the common law and the First Amendment, Dow Jones

and the public have qualified rights of access to the Court's docket in this case and to the filings and orders in it. Because there is no indication that any sufficiently important interest requires such broad sealing, the Court should unseal the docket in this case and all documents filed in it.[2]

## I.   BACKGROUND

### A.   The *De Facto* Secrecy Surrounding ECPA Applications and Orders.

This sealed case appears to involve an application by the government for pen register and trap and trace devices under the Pen/Trap Statute, 18 U.S.C. §§ 1321-1327, and for release of subscriber and other information under the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2711.

As background, both the Pen/Trap Statute and the SCA prescribe specific requirements the government must meet before it can secretly monitor telephone calls and collect information concerning individual callers. The Pen/Trap Statute authorizes the collection of real-time information regarding an individual's incoming and outgoing calls, but does not authorize the collection of the *content* of those calls. *In re Application for Pen Register and Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 749 (S.D. Tex. 2005) (citing 18 U.S.C.

---

[2] Dow Jones is filing similar motions in the following cases, also in the Southern District of Texas: *In re Sealed Matter*, No. 2:07-mc-00127 (S.D. Tex. Filed Oct. 30, 2007); *In re Sealed Matter*, No. 2:10-mc-00023 (S.D. Tex. Filed Mar. 24, 2010); *United States v. Sealed Pen Register*, No. 2:10-mj-00534 (S.D. Tex. Filed May 31, 2012); *United States v. Pen Register*, No. 2:10-mj-01235 (S.D. Tex. Filed Dec. 1, 2010); *United States v. Sealed Pen Register*, No. 2:10-mj-01000-1 (S.D. Tex. Filed Sept. 28, 2010); *United States v. Pen Register*, No. 2:10-mj-01002-1 (S.D. Tex. Filed Sept. 30, 2010); *United States v. Pen Register*, No. 2:10-mj-01005-1 (S.D. Tex. Filed Oct. 1, 2010); *United States v. Pen Register*, No. 2:10-mj-01031-1 (S.D. Tex. Filed Oct. 6, 2010); *United States v. Application for an Order under 18 U.S.C. 2703(d)*, 2:13-mj-00497 (S.D. Tex. Filed April 29, 2013); and *United States v. Sealed Search Warrant*, 2:13-mj-00523 (S.D. Tex. Filed May 8, 2013).

§ 3123(c)). To obtain an order permitting the use of a pen register or trap and trace device,[3] the government must submit to the court an application certifying that the "information likely to be obtained is relevant to an ongoing criminal investigation." 18 U.S.C. §§ 3122(b)(1)-(2). This is a lower standard than the "probable cause" showing required for obtaining a search warrant. The Pen/Trap Statute requires the temporary sealing of orders "until otherwise ordered by the court." 18 U.S.C. § 3123(d)(1). This provision gives the court discretion regarding "[h]ow long a pen/trap order should be sealed, and whether sealing should continue beyond the life of the pen register itself . . . ." *In re Sealing*, 562 F. Supp. 2d at 879.

The SCA allows the government to access the contents of stored electronic communications and customer information, generally without any notice to the affected individual. Where the government seeks the contents of electronic communications stored for 180 days or less, the SCA requires that the government support its application with a showing of probable cause (the same standard as for a search warrant). 18 U.S.C. § 2703(a). But where the government seeks the contents of communications older than 180 days or seeks only non-content subscriber "records"—a term broad enough to include connection records (indicating how long certain calls lasted, the number called, IP addresses, and cell-site location connections)—the government need only show "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Unlike the Pen/Trap Statute, however, the SCA does not contain a provision

---

[3] As this Court has explained, "a pen register is a device or process which records the telephone numbers of outgoing calls; [a] trap and trace device captures the telephone numbers of incoming calls." *In re Application for Pen Register and Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d at 749 (citing 18 U.S.C. § 3127).

5

for the automatic sealing of government applications or resulting orders. Rather, secrecy is maintained through various provisions imposing gag orders prohibiting recipients of an order from notifying affected individuals or any other person.[4]

As Magistrate Judge Smith has observed, "[i]n many districts the government routinely avoids these weaker SCA secrecy provisions by the simple expedient of combining its requests for a 2703(d) order and pen/trap order into a single application and order. The combined order is then automatically sealed and gagged by authority of the Pen/Trap Statute." Smith, at 321. The combination of these statutes' secrecy provisions means that neither the public nor the affected individual is able to inspect the government's application or the court's order. Although the sealing and gag orders issued pursuant to the different provisions of the ECPA are not expressly made permanent, because there is generally little reason to revisit those orders, the end result is often that those sealing orders remain in place and extensive government surveillance remains secret. *Id.* at 325.

## B.    The Court's Secret Docket and Sealed Judicial Records in this Case.

It appears that this case is an example of the broad, *de facto* secrecy surrounding ECPA applications and orders. Sometime before April 19, 2013, Magistrate Judge Brian Owsley issued an order providing for notice of unsealing of ECPA applications and orders in 146 ECPA cases,

---

[4] For example, when the government has obtained an order allowing it to obtain the contents of communications older than 180 days under 18 U.S.C. § 2703(b), the SCA allows for a 90-day delay providing notice to the affected customer where there "is reason to believe" that a number of specific adverse consequences—such as endangerment of the life or safety of an individual or of the investigation itself—would occur if contemporaneous notice were provided. 18 U.S.C. § 2705(a). The SCA also allows for the possibility of multiple 90-day extensions upon the required showing of potential harm. *See* 18 U.S.C. § 2705(a)(4). When the government obtains an order allowing access to the information described in 18 U.S.C. § 2703(c), it is not required to give any notice at all to the subscriber. 18 U.S.C. § 2703(c)(3).

including this one. But Judge Hayden Head vacated that Order on April 19, 2013, providing for the re-sealing of all 146 cases, "until further order of the Court."[5]

There does not appear to have been any further order, and this case thus remains sealed. In fact, this case is sealed *in its entirety.* No document appears on the electronic docket via PACER.[6] Instead, only the following message is displayed:

# Proceedings for case 2:10−mc−00022 are not available

As a result of this sealing, the outcome of this case is unknown. Presumably, the case involved at least one application under ECPA and an order either granting or denying that application. But the details of what the government was seeking and how the Court permitted are unknown. Given that this case is three years old, the underlying investigation is likely closed. But, again, there is no way for Dow Jones or the public to know for certain.

## II.    ARGUMENT AND AUTHORITIES

The secrecy that cloaks the docket in this case and the documents filed in it must yield to the media's and public's right of access. This right of access derives from two sources: the common law and the First Amendment. *See In re Application of N.Y. Times Co.*, 585 F. Supp. 2d 83, 87 n.2 (D.D.C. 2008). These rights are different in their scope and the level of their protection. *Id.* The common law is broad in scope; it applies to *all* "judicial records," *i.e.*, documents filed with the court. *In re Sealing*, 562 F. Supp. 2d at 889-90. And it can be overcome by a showing that the right of access is outweighed by competing interests. *Id.* at 894-95; *see also S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) ("In exercising its

---

[5] A copy of Judge Head's Order is attached to the Motion as Exhibit A.
[6] A copy of the electronic docket for this case is attached as Exhibit B.

discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure."). By contrast, the First Amendment right to judicial records is narrower, applying only to particular types of records. *See In re Application of N.Y. Times Co.*, 585 F. Supp. 2d at 87-88. But where it does apply, the First Amendment right of access yields only where continued sealing serves a compelling interest and is narrowly tailored to serve that interest. *Id.* at 90.

Here, the continued sealing of the documents and docket in this case violates both the common law and constitutional rights of access. Any interest in the sealing of the government's application and the Court's order has surely dissipated in the three years since this case was opened. Moreover, the sealing of the docket prohibits Dow Jones and the public from even knowing which documents exist, much less whether they were properly sealed or continue to require sealing. This secrecy cannot pass muster under the common law or the First Amendment.

### A.    The Court Should Unseal the Documents in this Case.

The press and public have an indisputable common law right of access to judicial records and documents, as the Supreme Court recognized in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978). Similarly, several circuits have held that the press and public also have a right to certain types of judicial documents under the First Amendment. *See, e.g.*, *In re Providence Journal Co.*, 293 F.3d 1, 10 (1st Cir. 2002) ("this constitutional [access] right ... extends to documents and kindred materials submitted in connection with the prosecution and defense of criminal proceedings") (quoting *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502 (1st Cir.

1989)).[7] Both of these rights apply to the documents in this case, including the government's application and the Court's order, and Dow Jones is not aware of any interests sufficient to overcome the common law and constitutional rights of access to these documents.

### 1. The Common Law Requires the Unsealing of These Judicial Records.

This Court has previously considered the application of the common law right of access to the types of ECPA records at issue here. In 2008, Magistrate Judge Smith recognized that ECPA applications and the orders granting or denying them are "judicial records" and therefore subject to the common law right of access. *In re Sealing*, 562 F. Supp. 2d at 891-92; *see also In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d) ("In re U.S.")*, 707 F.3d 283, 291 (4th Cir. 2013) (Section 2703(d) motions and orders are "judicial records"). In balancing the interests in access against the interests in nondisclosure, Magistrate Judge Smith noted the dearth of case law on this issue. *In re Sealing*, 562 F. Supp. 2d at 892 ("[N]o case directly on point has been found . . . ."). But he analogized ECPA applications and orders to search warrants, noting that several circuits have held that "there is at least a common law right of public access to a search warrant application once the warrant ha[s] been executed and filed with the clerk." *Id.* (citing *In re Application of Newsday*, 895 F.2d 74, 79 (2d Cir. 1990); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir. 1989); and *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988)). Based on this authority and Fifth Circuit case law emphasizing that a court's discretion to seal documents "is to

---

[7] *See also In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987) ("constru[ing] the constitutional right of access to apply to written documents submitted in connection with judicial proceedings that themselves implicate the right of access.") (citations omitted)); *Associated Press v. District Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("the public and press have a first amendment right of access to pretrial documents in general").

be exercised charily," Judge Smith held that the "general rule" will be that "the need for sealing will last only so long as the underlying investigation is active."[8] *In re Sealing*, 562 F. Supp. 2d at 893-94. Indefinite or permanent sealing will almost never be justified, as "[l]egitimate confidentiality interests will almost always be fully accommodated by redacting the troublesome words or passages." *Id.* at 895.[9]

Here, any ECPA application and court order appear to be more than three years old. It is difficult to imagine that they could still involve an active, ongoing investigation, and even if they do, any interest in confidentiality has surely waned with the passage of time.[10] *See In re Application of N.Y. Times Co.*, 585 F. Supp. 2d at 90 (no possibility of prejudice to government where sealed warrant documents related to closed investigation); *cf. In re U.S.*, 707 F.3d at 293 (government's interest in preserving integrity of *actively ongoing* criminal investigation justified sealing of Section 2703(d) motions and orders). Accordingly, given the absence of any indication that any legitimate interest supports the sealing of the application and order, the Court should unseal them and any other documents filed with or by the Court in this case.

2.    The First Amendment Requires the Unsealing of These Documents.

Although application of the common law right of access is sufficient to require the unsealing of these documents, application of the First Amendment right of access provides an independent and alternative basis for Dow Jones's request. In *In re Sealing*, Judge Smith did not

---

[8] *See, e.g., In re High Sulfur*, 517 F.3d at 230 (reversing district court's sealing of judicial records regarding the allocation of attorneys' fees); *see also Van Waeyenberghe*, 990 F.2d at 849-50 (holding that district court abused its discretion in sealing an agreed injunction where the court did not balance the common law right of access against the interests favoring non-disclosure).

[9] Dow Jones is not aware of Judge Smith's order having been modified since its issuance.

[10] As discussed below, the sealing of the docket in this case hampers Dow Jones's ability even to anticipate the interests, if any, that might support sealing.

consider the constitutional issue, noting the absence of case law and the maxim that constitutional questions ought to be avoided if possible. *See* 562 F. Supp. 2d at 887 (citing *In re Newsday*, 895 F.2d at 78 ("To determine whether there is such a right [of access], we first look to the common law, for we need not, and should not, reach the First Amendment issue if judgment can be rendered on some other basis.")). But the logic of his common law analysis applies with equal force to the First Amendment inquiry.

Again, the analogy to search warrants is instructive. In *In re Application of New York Times Co.*, the D.C. District Court considered whether warrant applications, supporting affidavits, and orders should remain sealed even though the underlying investigation was over. 585 F. Supp. 2d at 89. Rather than defer the constitutional question, the court considered it first. As with public access to judicial proceedings, access to judicial documents under the First Amendment requires consideration of the "experience and logic" test: (1) whether the place and process have historically been open to the press and general public, and (2) whether "public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 87 (citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986)).

With regard to the first prong, the D.C. District Court recognized that post-investigation warrant materials have traditionally been open to the public. *In re Application of New York Times Co.*, 585 F. Supp. 2d at 88. More generally, the court also relied on the "historic common law right of access to judicial records and documents that has been recognized in United States courts for well over a century." *Id.* at 89 (citing *Nixon*, 435 U.S. at 597 n.7, n.8).[11]

---

[11] As the Fifth Circuit has made clear, this first factor is not dispositive. *See United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983) (finding that "lack of an historic tradition of open bail reduction hearings does not bar our recognizing a right of access. . . .").

With regard to the second prong of the *Press-Enterprise* standard, the "logic" test, the court observed:

> [O]penness plays a significant positive role in the functioning of the criminal justice system, at least at the post-investigation stage. . . . . [W]arrant materials are often used to adjudicate important constitutional rights such as the Fourth Amendment protection against unreasonable searches and seizures. Public access to warrant materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police.

*Id.* at 90; *see also Gunn*, 855 F.2d at 574 (First Amendment right of access applied to warrant materials).

The same analysis applies here. ECPA's relevant provisions also protect the public against unjustified searches, requiring the government to make a suitable showing in order to obtain certain information. Indeed, for certain types of information, ECPA incorporates the Fourth Amendment's probable cause standard. *See, e.g.*, 18 U.S.C. § 2703(a). In light of the interplay between these laws, as well as the similar roles that ECPA orders and warrants play in criminal investigations, there is no reason why the First Amendment right of access should apply to warrant materials, but not to ECPA materials. *Cf. In re U.S.*, 707 F.3d at 292 n.9 (recognizing that warrant was closest analogy to Section 2703(d) order).

Just as the sealing of the government's application and Court's order in this case cannot withstand scrutiny under the common law, it also fails the stricter constitutional test, which allows sealing only where it is essential to preserve higher values and narrowly tailored to that interest. *See In re Application of New York Times Co.*, 585 F. Supp. 2d at 88. Again, the investigation at issue here is likely closed, and any sensitive information in the application or order could be protected through limited redaction. Indeed, to the extent any orders have been

entered in this case, those documents are "top drawer" judicial records, which are "hardly ever closed to the public." In re Sealing, 562 F. Supp. 2d at 890-91. Blanket sealing of all documents is therefore almost certainly unnecessary. Moreover, nothing suggests that the Court ever made the requisite findings identifying a "compelling" interest for continued sealing and explaining why less restrictive measures would be inadequate to protect the interest. *See id.* at 91(citations omitted).

**B.      The Court Should Unseal the Docket.**

In addition to the documents filed in this case, the docket itself is sealed. In fact, the electronic docket contains no entries for this case whatsoever. There is no acknowledgement on the electronic docket of any application, supporting affidavit, or order by the Court. All entries remain sealed.

Regardless of whether the common law and constitutional rights of access require unsealing of specific documents, the sealing of the docket in this case cannot be justified. As the Second Circuit has explained, "docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004); *see also United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1029-30 (11th Cir. 2005) (recognizing First Amendment right of access to docket sheets). If the docket sheet is sealed, the public's right of access to documents and proceedings is illusory. *Pellegrino*, 380 F.3d at 94 ("Sealed docket sheets would also frustrate the ability of the press and the public to inspect those documents, such as transcripts, that we have held presumptively open."). Moreover, as in this case, sealed dockets thwart the review of sealing orders, making it impossible for the press and public to

13

know what documents have been sealed and why. *Id.* Because no conceivable interest could justify such broad sealing, the Court should unseal the docket. At a minimum, therefore, the Court should sufficiently identify those documents in its docket, review those documents to ensure that the sealing is no more restrictive than necessary, and enter an order containing the required findings regarding why continued sealing is necessary.

## III.  CONCLUSION

For the foregoing reasons, Dow Jones respectfully requests that the Court grant its motion and enter an order:

(1)     Allowing Dow Jones to intervene;

(2)     Unsealing all documents filed with or by the Court in this case, whether or not such documents appear on the electronic docket sheet available via PACER, and

(3)     Requiring that (i) all documents related to this case be identified publicly on the electronic docket sheet and made available via PACER and (ii) if the Court determines that any document or part thereof should remain sealed or redacted, the sealing or redaction be no broader than necessary and the public description of that document be updated to reflect its general nature (*i.e.*, "Sealed Search Warrant Application"; "Sealed Order Denying Search Warrant Application") and provide as much additional information as possible.

Dated: June 2, 2014

Respectfully submitted,

/s/

Thomas S. Leatherbury
Attorney-in-Charge
State Bar No. 12095275
S.D. Tex. No. 19358
Telephone:  (214) 220-7792
tleatherbury@velaw.com
Marc Fuller
State Bar No. 24032210
S.D. Tex. No. 2035080
Telephone:  (214) 220-7881
mfuller@velaw.com

VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201-2975

Michael T Murphy
State Bar No. 24051098
SDTX No. 621089
Telephone:  (713) 758.2276
mmurphy@velaw.com

VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas  77002-6760

**Attorneys for Movant Dow Jones & Company, Inc.**

15

## Certificate of Conference

Information regarding the Assistant United States Attorney responsible for the above-entitled action is unavailable. I hereby certify that on June 2, 2014, I provided notice via fax (361-888-3200) to Kenneth Cusick, AUSA-in-charge, of the impending filing of the foregoing motion and provided contact information for the purpose of meeting and conferring regarding same.

Michael T. Murphy

## Certificate of Filing and Service

I hereby certify that on June 2, 2014, I filed the foregoing document with the Clerk of Court and served the same upon Kenneth Cusick, AUSA-in-charge, at One Shoreline Plaza South Tower, 800 N. Shoreline Blvd., Ste. 500, Corpus Christi, Texas 78401, by hand delivery.

Michael T. Murphy

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## IN THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE | § | |
| APPLICATION OF THE UNITED | § | |
| STATES OF AMERICA FOR AN | § | CASE NO.  See Exhibit "A" |
| ORDER: (1) AUTHORIZING THE | § | |
| INSTALLATION AND USE OF A PEN | § | **FILED UNDER SEAL** |
| REGISTER AND TRAP AND TRACE | § | |
| DEVICE; AND (2) AUTHORIZING | § | |
| RELEASE OF SUBSCRIBER AND | § | |
| OTHER INFORMATION | § | |

## ORDER VACATING ORDER
## TO SHOW CAUSE

The order of United States Magistrate Judge Brian Owsley providing for notice of

unsealing of orders and associated pen register and trap and trace applications is VACATED.

Those orders and their applications will remain sealed until further order of the Court.  *See*

18 U.S.C. § 3123(d)(1).  Exhibit "A" recites the case numbers of the applicable files.

ORDERED this 19th day of April, 2013.

_Hayden Head_

HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE

TRUE COPY I CERTIFY
ATTEST: _4 22 13_ Date _2_ # of pages
DAVID J) BRADLEY, Clerk of Court

By _____
Deputy Clerk

| | | | | |
|---|---|---|---|---|
| 1. 2:05-MC-50 | 31. 2:06-MC-39 | 61. 2:07-MC-37 | 91. 2:08-MC-33 | 121. 2:12-MJ-280 |
| 2. 2:05-MC-51 | 32. 2:06-MC-56 | 62. 2:07-MC-41 | 92. 2:08-MC-79 | 122. 2:12-MJ- 296 |
| 3. 2:05-MC-52 | 33. 2:06-MC-58 | 63. 2:07-MC-42 | 93. 2:09-MC-27 | 123. 2:12-MJ- 487 |
| 4. 2:05-MC-53 | 34. 2:06-MC-59 | 64. 2:07-MC-46 | 94. 2:09-MC-46 | 124. 2:12-MJ- 488 |
| 5. 2:05-MC-54 | 35. 2:06-MC-62 | 65. 2:07-MC-47 | 95. 2:09-MC-47 | 125. 2:12-MJ- 523 |
| 6. 2:05-MC-55 | 36. 2:06-MC-77 | 66. 2:07-MC-48 | 96. 2:09-MC-48 | 126. 2:12-MJ- 524 |
| 7. 2:05-MC-79 | 37. 2:06-MC-78 | 67. 2:07-MC-54 | 97. 2:09-MC-63 | 127. 2:12-MJ- 534 |
| 8. 2:05-MC-80 | 38. 2:06-MC-79 | 68. 2:07-MC-57 | 98. 2:09-MC-73 | 128. 2:12-MJ- 669 |
| 9. 2:05-MC-81 | 39. 2:06-MC-80 | 69. 2:07-MC-62 | 99. 2:10-MC-22 | 129. 2:12-MJ- 712 |
| 10. 2:05-MC-82 | 40. 2:06-MC-98 | 70. 2:07-MC-66 | 100. 2:10-MC-23 | 130. 2:12-MJ- 713 |
| 11. 2:05-MC-87 | 41. 2:06-MC-99 | 71. 2:07-MC-67 | 101. 2:10-MJ-1000 | 131. 2:12-MJ- 746 |
| 12. 2:05-MC-89 | 42. 2:06-MC- 100 | 72. 2:07-MC-68 | 102. 2:10-MJ-1002 | 132. 2:12-MJ- 755 |
| 13. 2:05-MC-90 | 43. 2:06-MC-101 | 73. 2:07-MC-99 | 103. 2:10-MJ-1005 | 133. 2:12-MJ- 756 |
| 14. 2:05-MC-98 | 44. 2:06-MC-109 | 74. 2:07-MC-100 | 104. 2:10-MJ-1031 | 134. 2:12-MJ-757 |
| 15. 2:05-MC-105 | 45. 2:06-MC-110 | 75. 2:07-MC-101 | 105. 2:10-MJ-1235 | 135. 2:12-MJ-774 |
| 16. 2:05-MC-106 | 46. 2:06-MC-114 | 76. 2:07-MC-102 | 106. 2:11-MJ-104 | 136. 2:12-MJ- 904 |
| 17. 2:05-MC-107 | 47. 2:06-MC-116 | 77. 2:07-MC-115 | 107. 2:11-MJ-131 | 137. 2:12-MJ- 905 |
| 18. 2:05-MC-108 | 48. 2:06-MC- 117 | 78. 2:07-MC-117 | 108. 2:11-MJ-468 | 138. 2:12-MJ- 906 |
| 19. 2:05-MC-109 | 49. 2:07-MC-06 | 79. 2:07-MC-120 | 109. 2:11-MJ-476 | 139. 2:12-MJ- 937 |
| 20. 2:05-MC-110 | 50. 2:07-MC- 09 | 80. 2:07-MC-123 | 110. 2:11-MJ-506 | 140. 2:12-MJ- 938 |
| 21. 2:05-MC-118 | 51. 2:07-MC- 11 | 81. 2:07-MC-124 | 111. 2:11-MJ-746 | 141. 2:12-MJ- 939 |
| 22. 2:05-MC-120 | 52. 2:07-MC- 12 | 82. 2:07-MC-125 | 112. 2:11-MJ-973 | 142. 2:12-MJ- 960 |
| 23. 2:05-MC-121 | 53. 2:07-MC- 13 | 83. 2:07-MC-126 | 113. 2:11-MJ-983 | 143. 2:12-MJ- 994 |
| 24. 2:05-MC-124 | 54. 2:07-MC- 14 | 84. 2:07-MC-142 | 114. 2:11-MJ-1000 | 144. 2:12-MJ- 995 |
| 25. 2:05-MC-136 | 55. 2:07-MC- 16 | 85. 2:08-MC-04 | 115. 2:11-MJ-1402 | 145. 2:12-MJ- 996 |
| 26. 2:05-MC-139 | 56. 2:07-MC- 17 | 86. 2:08-MC-05 | 116. 2:11-MJ-1403 | 146. 2:12-MJ-1026 |
| 27. 2:06-MC-03 | 57. 2:07-MC- 20 | 87. 2:08-MC-27 | 117. 2:11-MJ-1404 | |
| 28. 2:06-MC-04 | 58. 2:07-MC- 21 | 88. 2:08-MC-28 | 118. 2:12-MJ-031 | |
| 29. 2:06-MC-18 | 59. 2:07-MC- 22 | 89. 2:08-MC-31 | 119. 2:12-MJ-246 | |
| 30. 2:06-MC-20 | 60. 2:07-MC- 36 | 90. 2:08-MC-32 | 120. 2:12-MJ-247 | |

**Exhibit A**

# EXHIBIT B

**U.S. District Court**
**SOUTHERN DISTRICT OF TEXAS (Corpus Christi)**
**CIVIL DOCKET FOR CASE #: 2:10-mc-00022**

In Re: Sealed Matter                                      Date Filed: 03/24/2010
Assigned to: Magistrate Judge Brian L Owsley

**In Re**

**SEALED MATTER**

## Proceedings for case 2:10-mc-00022 are not available