**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

|   |   |   |
|---|---|---|
|   | § |   |
|   | § |   |
|   | § |   |
| IN RE SEALED MATTER | § | CASE NO. 2:10-mc-00022 |
|   | § |   |
|   | § |   |
|   | § |   |

## UNITED STATES' RESPONSE TO MOTION TO INTERVENE AND MOTION TO UNSEAL COURT RECORDS

Pursuant to this Court's order, the United States of America ("United States") hereby responds to Dow Jones & Company's ("Dow Jones'") motion to intervene and to unseal court records. For the reasons discussed below, the United States, while appreciating the seriousness of the issues raised by Dow Jones, opposes the unsealing of the records in this matter, and also opposes any alteration to the docket sheet.

## I

### STATEMENT OF THE PROCEEDINGS

On March 24, 2010, this matter was initiated. Details regarding the background of this matter, and its current status, are contained in the sealed appendix to this response, which the United States is filing contemporaneously.

On June 2, 2014, Dow Jones filed the instant motion ("Dow Jones motion"), seeking to intervene in this action and requesting the unsealing of all of the documents in this matter. Dow Jones also seeks the public identification on the docket sheet of the sealed documents. (Dow Jones motion at 1.) Dow Jones further requests that, should this court determine that any document should remain sealed or redacted, such sealing or redaction be no broader than

necessary and that the "public description of that document be updated to reflect its general nature." *Id.*

## II

## ISSUES PRESENTED

The United States accepts Dow Jones' assumption, for purposes of this response (*see* Dow Jones motion at 4), that this matter deals with a government request for pen register and trap and trace devices, and for release of subscriber and other information pursuant to 18 U.S.C. § 2703(d), a provision found in the Stored Communications Act, 18 U.S.C. §§ 2701 et seq. ("SCA"). Dow Jones' motion is grounded on its argument that the common law and the First Amendment afford a public right of access to the documents in this matter. Evaluation of Dow Jones' arguments requires this Court to decide five issues:

1. Is intervention permissible in an action under 18 U.S.C. § 2703(d)?

2. Does Dow Jones have standing?

3. Does the common law require the unsealing of the documents in this matter?

4. Does the First Amendment require the unsealing of the documents in this matter?

5. Must the docket sheet be amended to reflect the nature of the sealed documents in this matter?

## III

## SUMMARY OF ARGUMENT

Actions under 18 U.S.C. § 2703(d) are not susceptible to "intervention." Dow Jones' motion is more appropriately treated as a request for access to the documents in this matter. Dow Jones has standing to lodge such a request. Even so, this Court should deny Dow Jones' request, because neither the common law nor the First Amendment require or impel the unsealing of the documents in this matter. In enacting the SCA, Congress intended to establish a

comprehensive statutory mechanism governing law enforcement access to stored electronic communications. That comprehensive mechanism resulted in the abrogation of any common law presumption of access to documents in section 2703(d) matters. The enactment of a comprehensive statutory scheme also evinced Congress' desire to treat actions to obtain stored electronic communications differently from search warrant matters, and thereby to place section 2703(d) materials into the narrow class of documents that are immune from any common law presumption of access. In any event, even if there is a common law presumption of access, sound reasons for continued secrecy can outweigh that presumption.

There is likewise no First Amendment right of access to SCA materials, because there is neither a history of openness in actions to obtain information under the SCA nor any role for openness in the process for obtaining that information. Finally, this Court should reject Dow Jones' request that the docket sheet describe the documents in this matter with particularity, because there is no requirement for an itemized docket in an action which the public has no right to access.

## IV

## LAW AND ARGUMENT

### A. Intervention is not permissible in a proceeding under 18 U.S.C. § 2703(d). Nevertheless, this Court should entertain Dow Jones' motion.

Dow Jones styles its pleading as "motion to intervene." (Dow Jones motion at 1.) At the outset, this Court should consider whether intervention is permissible in an action under 18 U.S.C. § 2703(d). Dow Jones invokes the First Amendment and the common law as justification for its right to access the documents, but cites no provision of law entitling it to intervene in this matter. A court order issued under section 2703(d) is a criminal matter – the text of the statute provides that a court order may be issued when a governmental entity offers reasonable grounds

to believe that the contents of a wire or electronic communication, or the records or other information sought, "are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  No procedural vehicle exists for intervention in criminal cases: rather, motions to intervene are a creature of civil procedure.  *See generally* Fed. R. Civ. P. 24 (governing motions to intervene).  In fact, 18 U.S.C. § 2703(e) specifically rejects even a civil cause of action against providers for complying with a court order, let alone the United States for requesting the sealing of such a court order.

In the context of appellate review, the Fifth Circuit has expressed misgivings regarding "motions to intervene" for the purpose of challenging lack of media access to trial proceedings. *See United States v. Chagra*, 701 F.2d 354, 358-59 (5th Cir. 1983).  The court has also stated that third parties lack standing in criminal proceedings.  *See McClure v. Ashcroft*, 335 F.3d 404, 411 (5th Cir. 2003); *see also United States v. Grundhoefer*, 916 F.2d 788, 792 (2d Cir. 1990) ("a private citizen generally lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution") (citation and internal quotation marks omitted).

Although "intervention" is not permitted in criminal actions, some courts in this circuit have permitted media organizations and the public to object in the district court, on First Amendment or common law grounds, to judicial decisions to close hearings or seal documents in criminal cases.  *E.g.*, *United States v. Edwards*, 823 F.2d 111, 113-14 (5th Cir. 1987) (newspaper objected to closure of proceedings and orders sealing the record regarding alleged juror misconduct); *Chagra*, 701 F.2d at 356-57 (reporters objected to magistrate judge's decision to close portions of bond reduction hearing); *United States v. Gurney*, 558 F.2d 1202, 1205 (5th Cir. 1977) (reporters filed "Petition for Hearing and for Vacation of Restrictions on Press and

Other News Media"). This Court should treat Dow Jones' motion as a request for access to the documents in this section 2703(d) matter, but should not permit Dow Jones' "intervention" in the matter. A district court in this circuit took a similar approach in *United States v. Ketner*, 566 F. Supp. 2d 568, 572-73 (W.D. Tex. 2008) (Montalvo, J.), and treated a "motion to intervene," in the context of an ongoing case, as a request to inform the public and press of upcoming proceedings and to keep the proceedings open.

**B.  *Dow Jones possesses standing to lodge its request.***

A further prerequisite to any discussion of Dow Jones' asserted request is its standing to raise that request. The exercise of federal judicial power is legitimate only in actual "cases" or "controversies," and one of the controlling factors in the definition of a case or controversy under Article III is the litigant's standing to invoke the power of a federal court, a principle which enforces the case or controversy requirement. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597-98 (2007); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). Indeed, the Supreme Court has described standing as "perhaps the most important … doctrine[]" that places fundamental limits on federal judicial power. *Allen v. Wright*, 468 U.S. 737, 750 (1984). Article III standing requires a personal injury fairly traceable to the challenged action, and relief from that injury must be likely to follow from a favorable decision. *Id.* at 751; *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil, Inc.*, 73 F.3d 546, 556 (5th Cir. 1996).

In resolving the standing question here, the primary question is whether Dow Jones has suffered an injury in fact. The Fifth Circuit has found that news organizations have standing to challenge orders that impede their ability to receive protected speech. *See*, *e.g.*, *Davis v. East Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 926-27 (5th Cir. 1996). The court has also ruled, in the context of criminal trial practice (as opposed to pretrial practice), that media organizations

and reporters have standing to challenge an order denying access to documents. *See Gurney*, 558 F.2d at 1206. The Fifth Circuit has also ruled that a journalist who is affected by an order that affects his or her right to gather news has standing to challenge that order. *United States v. Aldawsari*, 683 F.3d 660, 664-65 (5th Cir. 2012).

Here, Dow Jones does not explicitly base its claim of entitlement to access the sealed documents on First Amendment rights to receive protected speech, access trial documents, or gather the news. Rather, Dow Jones asserts that its standing is based on its aim of "vindicat[ing] the public's right to access judicial records." *See* Dow Jones motion at 1 n.1 (citing *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010), and *Jessup v. Luther*, 227 F.3d 993, 999 (7th Cir. 2000)). Dow Jones' argument sweeps too broadly: *Holy Land* and *Jessup* merely buttress the notion that the First Amendment right to gather news affords a media organization the standing to challenge obstacles to access, so that the organization can later, if it chooses, disseminate to the public any information thus unearthed. *See Luther*, 227 F.3d at 997 (differentiating between the press and the general public in articulating the importance of public access to court proceedings). The more appropriate conclusion is not that Dow Jones possesses standing to speak for the public writ large, but rather that Dow Jones' right to gather news is affected by the sealing of the documents in this matter. *Cf. Aldawsari*, 683 F.3d at 664-65.[1] Accordingly, the United States believes that Dow Jones possesses standing to bring the instant motion, but only on this far narrower ground.

---

[1] Although a concurring opinion in *Richmond Newspapers, Inc. v. Virginia*, suggested that the press serves as the agent of the public when seeking access to court proceedings, 448 U.S. 555, 586 & n.2 (1980) (Brennan, J., concurring), that analysis was based on the importance of the press' ability to gather the news.

***C. Neither a common law presumption of access nor the First Amendment requires the unsealing of the documents in this case.***

Courts have long recognized that public monitoring of the judicial system fosters the important values of quality, honesty, and respect for our legal system. "As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud." *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 161 (3d Cir. 1993) (quoting *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991) (citation omitted). This recognition is embodied in two distinct presumptions of public access to judicial proceedings and records: a common law right of access to "judicial documents" and a First Amendment right of access to certain criminal proceedings and materials submitted therein. The presumption that judicial records are open to the public is based on the nature of democracy and the "citizen's desire to keep a watchful eye on the workings of public agencies." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). As the Fifth Circuit has observed, allowing the public to access judicial records "'serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness.'" *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 682 (3d Cir. 1988). Even so, a district court does possess supervisory authority over its records, *Holy Land*, 624 F.3d at 689, and a court may deny access to records if the records become a vehicle for improper purposes. *Ketner*, 566 F. Supp. 2d at 582 & n.41 (citing *Nixon*, 435 U.S. at 597-98).

Relying on these ideals, Dow Jones asserts that common law and First Amendment presumptions of access each require the unsealing of the documents in this matter. For the reasons discussed below, this Court should reject Dow Jones' arguments.

***1. Congress intended that applications and orders under the Stored Communications Act be less accessible to the public than applications and affidavits for search warrants.***

Dow Jones seeks access to applications and orders regarding information that the United States sought pursuant to the SCA, a part of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* In support of its request, Dow Jones attempts to liken documents filed in SCA matters to those seeking search warrants. *See* Dow Jones motion at 9-10, 11. To better understand Dow Jones' assertion that a presumption of access applies to documents in SCA matters, and to better understand why that assertion is incorrect, it is useful to review the SCA's structure and the reasons for its enactment.

### *a. Why Congress decided that the SCA was needed.*

Fourth Amendment protections at the time of the SCA's 1986 passage left a gap in protection for individuals. While the Fourth Amendment offers strong privacy protections for an individual's "home" in the physical world, that individual does not have a physical "home" on the internet when he or she uses the internet – "just a block of ones and zeroes stored somewhere on somebody else's computer." Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1209 (2004) ("Kerr User's Guide"). When individuals use the internet, they communicate "with and through that remote computer to contact other computers. Our most private information ends up being sent to private third parties and held far away on remote network servers." *Id.* at 1209-10.

According to Professor Kerr, this feature of the internet's network architecture raised three significant concerns regarding the Fourth Amendment's protection (or lack thereof) of internet communications. First, there was uncertainty whether and when internet users could retain a reasonable expectation of privacy in information sent to network providers, including stored emails: internet service providers hold and process a user's information, but Supreme

Court jurisprudence held that the Fourth Amendment does not protect information revealed to third parties. *Id.* at 1210-11. Second, the Fourth Amendment's rules regarding grand jury subpoenas permitted the government to issue subpoenas to internet service providers compelling the disclosure of their customer's information. *Id.* at 1211-12 & n.16; *see United States v. Bailey (In re Subpoena Duces Tecum)*, 228 F.3d 341, 346-49 (4th Cir. 2000). Finally, most internet service providers were private actors who, under the private search doctrine, could search or seize information and disclose it to the government without any Fourth Amendment ramifications. Kerr User's Guide at 1212 & n.18. Professor Kerr observed:

> Taken together, these three concerns make it difficult for robust Fourth Amendment protections to apply online. Because private files are held remotely by private ISPs, current doctrine does not protect remotely stored noncontent files and leave the protection of stored content files unclear. And even if those files are protected, they likely can be subpoenaed by the government without probable cause. And even if the files cannot be subpoenaed, private ISPs can search through the files and disclose the fruits to law enforcement under the Fourth Amendment's private search doctrine.

*Id.* The sum of these concerns was a significant and undesirable imbalance in the treatment of tangible property stored in one's home from the treatment of online property that is stored with an internet service provider.

### b. How the SCA addressed the need for privacy protections.

The SCA addressed this imbalance by means of a comprehensive statutory scheme, "a range of statutory privacy rights against access to stored account information held by network service providers. The [SCA created a] set of Fourth Amendment-like privacy protections by statute, regulating the relationship between government investigators and service providers in possession of users' private information." Kerr User's Guide at 1212. The SCA created limits on the government's ability to compel providers to disclose information in their possession about their customers and subscribers. It also placed limits on internet service providers' ability to

voluntarily disclose information about their customers and subscribers to the government. 18 U.S.C. §§ 2702(a), (b); *see also* Kerr User's Guide at 1212-13.

Legislative history reinforces the view that Congress intended for the SCA to be a comprehensive plug in the gap of Fourth Amendment privacy protections and to squelch government overreaching. The act was intended "to update and clarify federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." S. Rep. No. 99-541, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3555 ("SCA Report"). In enacting the SCA, Congress recognized that technological advances had "expanded dramatically" the opportunity for government to intrude into the lives of citizens. SCA Report at 2, 1986 U.S.C.C.A.N. at 3555. Fourth Amendment jurisprudence, however, gave little protection to the privacy interests of persons whose information and records were "subject to control by a third party computer operator." *Id.* at 3, 1986 U.S.C.C.A.N. at 3557. Congress was concerned that information in the hands of third parties might "be open to possible wrongful use and public disclosure by law enforcement authorities as well as unauthorized private parties." *Id.*

With the SCA, then, Congress established a comprehensive framework governing the acquisition and dissemination of this highly private information, both by the government and by private individuals and entities, in order to protect the privacy interests of customers and subscribers in their electronically stored information and records. *See* 18 U.S.C. § 2701, SCA Report at 35-36, 1986 U.S.C.C.A.N. at 3589-90. Among other things, the SCA prohibits service providers from voluntarily disclosing stored customer communications and records except as specifically authorized. *See* 18 U.S.C. §§ 2702(a)-(c). Rather than simply requiring that the government obtain a search warrant, the SCA also sets forth other procedures that the

government may employ to obtain stored information from a third-party service provider (depending on whether the government is seeking the content of a stored communication or non-content information). *See* 18 U.S.C. §§ 2703(a)-(c). In some cases, the government must notify the customer that it is accessing the customer's stored communications, *see* 18 U.S.C. § 2703(b)(1)(B), but under certain circumstances that notice may be delayed (18 U.S.C. § 2705(a)) or dispensed with altogether (18 U.S.C. § 2703(b)(1)(A)).

### c. In strengthening privacy protections, Congress expressed its desire that SCA documents be treated differently from search warrant documents.

While the SCA established Fourth Amendment-like protections, however, Congress did not intend that actions to obtain documents under the SCA be treated like those for search warrants – the mechanism traditionally required for Fourth Amendment searches or seizures. Congress modeled the SCA not after the search warrant process, but after the Right to Financial Privacy Act ("RFPA"). SCA Report at 3, 1986 U.S.C.C.A.N. at 3557; *see* 12 U.S.C. §§ 3401 *et seq.* Congress did this because it sought to balance privacy interests against "the Government's legitimate law enforcement needs." SCA Report at 3, 1986 U.S.C.C.A.N. at 3557. Indeed, there are marked similarities between the procedures and standards used to obtain information under the SCA and the RFPA, and marked differences between SCA procedures and standards and those for search warrants. These differences evince Congress' intent that requests for access to documents in SCA actions be treated differently from requests for search warrant applications and affidavits.

Like the RFPA's provisions for financial information, the SCA does permit the government to access customers' stored electronic communications by use of a warrant (*see* Fed. R. Crim. P. 41; *compare* 18 U.S.C. §§ 2703(b)(1)(A), 2703(c)(1)(A), *with* 12 U.S.C. § 3406), and indeed requires a warrant in order to obtain the contents of those communications in some

circumstances,[2] but it also permits access through the use of various alternate means for purposes of obtaining stored communication information, including the use of administrative subpoenas (*compare* 18 U.S.C. § 2703(b)(1)(B)(i) *with* 12 U.S.C. § 3405) and judicial subpoenas (*compare* 18 U.S.C. § 2703(b)(1)(B)(i), *with* 12 U.S.C. § 3407).  While the RFPA requires notice to the customer that his or her financial information has been accessed, that statute (like the SCA) also allows the government to obtain a court's permission to delay that notice.  *See* 12 U.S.C. §§ 3406(c), 3409.

By contrast, the standard by which the government can obtain information under sections 2703(b) or (c) is very different from that required for issuance of search warrants.  *Compare* 18 U.S.C. § 2703(d) ("specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation")[3] *with* Fed. R. Crim. P. 41(d)(1) ("probable cause to search for and seize a person or property or to install and use a tracking device").  And unlike search warrants, section 2703(d) orders do not require that an officer be present when a section 2703(d) order is executed.  *See* Fed. R. Crim. P. 41(f). In certain circumstances, the government need not give notice that it has accessed the subscriber's electronic communication records pursuant to section 2703(d), but Federal Rule of Criminal Procedure 41(f)(1)(C) requires the officer executing the warrant to give a copy of the warrant and receipt for the property to the person from whom that property was taken. Furthermore, section 2703 lacks any return requirement: the rules regarding search warrants, by contrast, impose specific and detailed requirements for the executing officer to create an

---

[2]  18 U.S.C. § 2703(b)(1)(A).

[3]  The standard for obtaining documents via administrative or judicial subpoena under the RFPA is also less than that required for search warrants.  The government must show that the information sought is "relevant to a legitimate law enforcement inquiry."  12 U.S.C. §§ 3405(1), 3407(1).

inventory and return both the inventory and the warrant to the designated magistrate judge. Finally, and perhaps most significantly, Federal Rule of Criminal Procedure 41(i) requires the designated magistrate judge to attach to the warrant a copy of the return, of the inventory, and of all other related papers and to deliver them to the clerk in the district where the property was seized; section 2703 is notably devoid of any such requirement.

The foregoing information demonstrates that there are significant differences between applications for section 2703(d) orders and applications for search warrants. The reasons for these differences are the reasons for the very enactment of the SCA: the desire for enhanced protection of privacy interests in both stored communications and in information relating to those communications, as well as the facilitation of appropriate law enforcement activity. Dow Jones' reliance on comparisons to search warrants, then, is simply not useful when determining whether section 2703(d) orders and applications should be made publicly accessible. And as will be discussed next, Dow Jones' attempt to liken the two mechanisms seeks a result that is contrary to the intent of Congress. This Court should conclude that there is no presumptive right of access to section 2703(d) applications and orders under either the common law or the First Amendment.

### 2. There is no presumptive common law right of access to documents in section 2703(d) actions.

Common law establishes a presumption of public access to judicial records. *Van Waeyenberghe*, 990 F.2d at 848 (citing *Nixon*, 435 U.S. at 597). This presumption has been said to predate the constitution itself. *See Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 429 (5th Cir. Unit A 1981). Dow Jones argues that this common law presumption requires the unsealing of the documents in this matter. (Dow Jones motion at 9-10.) Dow Jones' argument, however, sails wide of the mark. First, Congress abrogated any common law presumption of access by enacting the SCA, and determined that public access to pleadings in section 2703(d) actions was

inappropriate.  Even if reference to the common law were permissible, Congress has placed section 2703(d) materials into that narrow class of documents that is immune from the common law presumption of access.  Additionally, the common law presumption does not apply in this case because the documents sought by Dow Jones are not "judicial records."  Finally, and in any event, any common law presumption is outweighed by countervailing interests favoring continued sealing of the documents.

### a. Congress has abrogated any common law presumption of access with respect to documents in section 2703(d) actions, so reference to the common law is not permissible.

Abrogation of a common law principle occurs when a contrary statutory purpose speaks directly to the question addressed by the common law.  *United States v. Texas*, 507 U.S. 529, 534 (1993).  Courts "may take it as a given that Congress has legislated with an expectation that the [common law] principle will apply except when a statutory purpose to the contrary is evident," *see Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (internal quotation marks omitted), but Congress need not affirmatively proscribe the common law doctrine at issue. *Texas*, 507 U.S. at 534; *see also Milwaukee v. Illinois*, 451 U.S. 304, 315 (1981).  When Congress does speak directly to the question addressed by the common law, any resort to the common law is preempted.  *See Resolution Trust Corp. v. Miramon*, 22 F.3d 1357, 1360-61 (5th Cir. 1994).  That is precisely what has happened in this case.

As discussed above, Dow Jones brings its motion to obtain access to documents filed in this section 2703(d) matter.  But the SCA's structure, together with Congress' twin essential purposes for enacting it (to protect privacy interests and the government's interest in enforcing the criminal laws), signify Congress' intent to abrogate any common law presumption of access. The existence of section 2703(d) orders and the motions that support them either "implicate or

directly convey highly private information and confirm the existence of a criminal investigation." *United States v. Appelbaum*, 707 F.3d 283, 297 (4th Cir. 2013) (Wilson, D.J., concurring).  To presume a common law right of access to such records merely by virtue of the government's obtaining an order from a federal court (which in this case is emplaced to act as a check against government overreaching), does violence to the SCA's essential purpose.  *See id.*  Paradoxically, if a common law presumption of access applied to section 2703(d) orders, the government's "monitored intrusion of the citizen's private interests would thereby justify privacy intrusions by others," and would magnify rather than minimize invasions of privacy.  *Id.*  For this reason, this Court should conclude that Congress has spoken directly to the question addressed in the common law presumption of access, and thus that the SCA preempts any such presumption.

Moreover, District Judge Wilson noted in his concurrence in *Appelbaum* that a presumption of a common law right of access would entangle itself with the SCA in incongruous ways.  As he stated:

> The [SCA] provides, for example, when notice will be given to an account holder or subscriber, when it need not be given at all, and when the court may delay notice.  But when there is a public right of access, this court has prescribed very particular procedures that the district court must follow when sealing documents – including the provision of some form of public notice, a consideration of less drastic alternatives, and factual findings to the effect that the circumstances of the case warrant overriding the public's presumptive right of access.  [citation omitted]  Congress has, however, within the confines of the [SCA], specified when notice to the subscriber is required and when it is not.  Surely Congress did not intend that courts wrestle in every instance in the course of an investigation with public notice and sealing alternatives in spite of the [SCA's] detailed individual notice provisions.  Surely the public can have no greater right of access than the subscriber to matters involving the subscriber's own electronic information.

707 F.3d at 297.  District Judge Wilson summed up the point:

> I think it indisputable that Congress' primary concern in passing the Electronic Communications Privacy Act of 1986 is revealed by the Act's very name. Congress sought to protect the privacy interests of individuals in electronically

> stored information.  It sought to do so by placing a judicial officer between law
> enforcement and the acquisition of that information.  It is, to say the least, an
> unintended consequence that when Congress inserted a judicial officer into the
> mix, a common law right of access resulted[4] that would require a subscriber to
> fight publicly to safeguard that which Congress deemed private.  In my view, a
> common law right of access irreconcilably conflicts with the statutory scheme of
> the Electronic Communications Privacy Act.

*Id.*  Judge Wilson was correct, because Congress intended that the SCA supplant any common law presumption of access.  Far from "flouting" any right of access (*see* Dow Jones motion at 2), the continued privacy of the documents in this matter implements Congress' desire to protect the privacy interests guaranteed by the SCA and the needs of law enforcement.

Because reference to the common law is not permitted in this situation, this Court should reject Dow Jones' reliance on any common law presumption of access.  This Court should conclude instead that any right of access can stem only from the First Amendment, and should analyze Dow Jones' request accordingly.  For the reasons discussed in Section C.4 below, the First Amendment does not confer a right of access on documents in section 2703(d) matters.

### b.  Section 2703(d) materials fall within the narrow class of documents that are not subject to the common law presumption of access.

Despite *Nixon*'s recognition that the public has a general right to inspect and copy judicial records and documents, that right is not absolute.  A narrow range of documents is not subject to the common law right of public access at all, because those documents have "traditionally been kept secret for important policy reasons."  *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989).  Among those documents falling outside the common law presumption of access, under Ninth Circuit law, are grand jury transcripts and search warrant materials in the midst of a pre-indictment investigation.  *See Kamakana v. City & County of*

---

[4]  The *Appelbaum* majority had concluded that a common law presumption of access did exist.  *See Appelbaum*, 707 F.3d at 291.  Judge Wilson disagreed with that conclusion, and indeed the court's conclusion was incorrect, for the reasons discussed in the main text.

*Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Thus, where there is neither a history of access nor an important public need justifying access, records of certain pretrial proceedings do not admit of a common law right of access. *Times Mirror*, 873 F.2d at 1219; *accord United States v. Smith*, 123 F.3d 140, 156 (3d Cir. 1997) (no common law right of access to grand jury materials); *see also In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998) (rules regarding access to grand jury proceedings supplanted any common law right of access that might once have existed).

In enacting the SCA, Congress indicated its desire to shield section 2703(d) materials from the common law right of access as well. Congress purposefully created privacy protections in stored electronic communications and emphasized their importance. Thus, separate and apart from Congress' abrogation of a common law presumption of access to SCA materials through its creation of a comprehensive statutory scheme, the significant protections placed by Congress on stored electronic communications places section 2703(d) actions to obtain those communications firmly into that class of documents which are immune from any common law presumption of access. Congress has created a system describing precisely how that information may be collected and used for law enforcement purposes, what notice must be given to subscribers, and what remedies are available in the event of a violation of the statutory scheme. Congress' comprehensive decisions in this regard conclusively prohibit any intrusion by the common law that would result in a lessening of those protections, and exhibit this nation's public policy that there is no public need justifying access to section 2703(d) applications and orders. *Cf. Times Mirror*, 873 F.2d at 1219. Likewise, there is no history of public access to section 2703(d) materials. This Court should find, then, that the common law presumption of access does not apply.

Dow Jones may protest that the search warrant process admits of a common law presumption of public access to underlying applications and affidavits, and that section 2703(d) materials should do so as well. But as Dow Jones correctly acknowledges, *see* Dow Jones motion at 9, neither the Supreme Court nor the Fifth Circuit has definitively addressed the scope of a common law right of access to search warrant materials, even after the warrant has been returned. *See In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 892 (S.D. Tex. 2008) (Smith, M.J.). In fact, at least two courts, including a district court in this circuit, have held that no such right exists, at least during an ongoing pre-indictment criminal investigation. *United States v. Bus. of the Custer Battlefield Museum*, 658 F.3d 1188, 1192 (9th Cir. 2011); *Times Mirror Co.*, 873 F.2d at 1221; *In re Search Warrants in Connection with Investigation of Columbia/HCA Healthcare Corp., in El Paso, Tex.*, 971 F. Supp. 251, 253 (W.D. Tex. 1997) (Briones, J.);[5] *but see In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 572-74 (8th Cir. 1988) (finding right of access to search warrant materials at the pre-indictment stage). In this case, Dow Jones is essentially asking this Court to create sweeping new precedent, not only to extend the common law presumption of access to search warrants in our circuit, but to stretch even farther and apply that new precedent to the SCA process – a process which is, by Congress' design, qualitatively different from that of search warrants.[6]

---

[5] Dow Jones was the unsuccessful litigant seeking access in the *Columbia/HCA* case.

[6] For the same reasons, this Court should decline Dow Jones' invitation to announce a "general rule" that, thanks to the common law presumption of access, section 2703(d) orders should be sealed only for so long as underlying criminal investigation remains active. *See* Dow Jones motion at 9-10. As discussed here, section 2703(d) orders are not subject to the common law right of access at all. But even if they were, a "general rule" regarding the timing of access would be inappropriate, because a reviewing court would be required to weigh the various competing interests in determining whether a presumption of access would remain. This point is discussed in greater detail in Sections C.3 and E, below.

It bears repeating that section 2703(d) orders and applications are fundamentally different from search warrants and their applications. Whatever public access might exist with regard to search warrant documents, Congress has placed special emphasis on protection of stored electronic communications. In the context of search warrants, Federal Rule of Criminal Procedure 41(i) requires the magistrate judge to whom the warrant is returned to attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was seized. This requirement could be viewed as lending some support to the notion that the public may have a qualified common law right of access to search warrant materials, because items filed with the clerk could be viewed as carrying a greater public interest. But in the context of section 2703(d) applications and orders, however, this comparison falters: section 2703(d) lays out a specific procedure for obtaining cell site data – wholly separate from the warrant process – that does not require return of any documents to the court, or the filing of any documents with the clerk's office. Had Congress intended for section 2703(d) orders to be treated like search warrants, it had a ready-made model in the form of Rule 41(i), yet decided to take a different path and exempt the section 2703(d) process from the return and filing requirements. This is strong evidence that Congress intended for the entire section 2703(d) application and order process to be treated qualitatively differently from that of search warrants: the application process is different; the standard for granting requests is lower, *cf. In re Application of the United States for Historical Cell Site Data*, 724 F.3d 600, 606 (5th Cir. 2013); the return process is different; and the policy of privacy protection is stronger. This intent for different treatment of section 2703(d) orders, embodied in statute, defeats any common law right to the contrary that may exist with regard to search warrants. *Cf. Appelbaum*, 707 F.3d at 295 (Wilson, D.J., concurring).

Dow Jones may complain that Congress has chosen poorly in electing to adopt a different standard for SCA materials. But the considerations for or against adopting a different standard for treatment of these two separate mechanisms are for Congress to balance. *See In re Application of the United States for an Order Directing Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't*, 620 F.3d 304, 319 (3rd Cir. 2010.) Thus, because the respective processes for obtaining and handling search warrants and section 2703(d) orders are significantly different, an effort to compare the respective rights of access similarly is simply not useful. For purposes of resolving Dow Jones' request here, this Court should conclude that Congress' selection of different processes for section 2703(d) orders also evinces Congress' desire that such orders not be treated the same as search warrants.

### c. The documents sought by Dow Jones are not "judicial records."

Alternatively, even if reference to the common law is permissible (which it is not), the common law presumption of access does not apply because the documents sought by Dow Jones in this matter are not judicial records. The common law presumption applies only to "judicial records and documents." *See Nixon*, 435 U.S. at 597. Dow Jones contends that the term "judicial records" simply means all documents filed with the court. (Dow Jones motion at 7.) This assertion is incorrect. "Not all documents filed with a court are considered 'judicial documents.'" *United States v. Gonzales*, 150 F.3d 1246, 1255 (10th Cir. 1998). The term "judicial records" includes only those materials on which a court relies in determining litigants' substantive rights, as opposed to those that relate merely to the judge's role in the management of the proceedings and therefore play no role in the adjudication process. *See United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013); *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) ("what makes a document a judicial record and subjects it to the common law right of

access is the role it plays in the adjudicatory process");[7] *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document"); *but see Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 782 (3d Cir. 1994) (the filing of a document gives rise to a presumptive right of access); *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d at 890-91.

Thus, for example, a judicially approved settlement agreement, filed in district court, was held to be a "judicial record" because it determined the litigants' substantive rights.  *See Van Waeyenberghe*, 990 F.2d at 849.  On the other hand, discovery disputes do not ordinarily result in the determination of the parties' substantive rights, so documents filed with regard to those disputes are not considered judicial records to which the presumption of public access attaches. *See Kravetz*, 706 F.3d at 54; *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d at 890 ("Such materials, though subject to the judicial process, should probably not be considered judicial records at all.").  Similarly, financial information submitted in support of requests for appointment of counsel have been held not to be judicial records, and thus not subject to a presumption of access.  *United States v. Lexin*, 434 F. Supp. 2d 836, 847-49 (S.D. Cal. 2006).  This result holds true even after the conclusion of a criminal proceeding.  *See United States v. Connolly*, 321 F.3d 174, 178-81 (1st Cir. 2003).

One circuit court of appeals has found that section 2703(d) orders and their underlying applications are "judicial records."  In *Appelbaum*, the Fourth Circuit determined that section 2703(d) orders are "judicial records" because they are judicially authored or created, and that the

---

[7]  This is especially true in a case like *El-Sayegh*, where the proposed plea agreement was never consummated. Compare the situation where a government request for section 2703 material is denied by a court: one would be hard-pressed to claim that the document submitted is a "judicial document" if the court never authorized the collection of the requested information and the matter ended there.

underlying applications are judicial records because they are filed with the objective of obtaining judicial action or relief. 707 F.3d at 290-91. But contrary to *Appelbaum*'s reasoning, however, section 2703(d) orders are essentially akin to grand jury subpoenas, notwithstanding that a judge, rather than the grand jury, authorizes the request. *Cf. Smith*, 123 F.3d at 156 (grand jury materials have historically been inaccessible to the press and the general public, and are therefore not judicial records). Moreover, applications for section 2703(d) orders are not generated by the court, but rather are documents submitted by the government for the purpose of obtaining business records. *See Amodeo*, 44 F.3d at 145 ("We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.").

Neither section 2703(d) orders nor the motions that request them are used at criminal trials. Such documents are generated and considered in the course of a proceeding that is *ex parte* and non-adversarial in nature; neither the application nor the order is used to determine the guilt or innocence of any investigation target, and these documents are not evidence of any crime. Here, no one's substantive rights were at issue in reviewing and deciding whether to grant the section 2703(d) order. Not that this would be determinative: even if the reviewing judge's decision regarding a section 2703(d) application might affect a target's constitutional rights, "[o]ther administrative decisions that effectuate constitutional rights are made outside the judiciary entirely, and create no presumption of access to the documents used in the decision." *Connolly*, 321 F.3d at 189-90. Thus, both the order and the documents that were submitted to request and justify it did not constitute "judicial records." Accordingly, the common law presumptive right of access does not apply to the documents sought by Dow Jones here.

### *3. Even if a common law presumption of access applies, countervailing interests outweigh that presumption.*

Even if a common law presumption of access applies to the documents in this matter, this Court should nonetheless find that significant countervailing interests militate against access to the documents, and that these interests outweigh any common law presumption of access.

The common law presumption of access is neither absolute nor insurmountable. Indeed, the presumption can be overcome if this Court finds, in its discretion, that interests favoring nondisclosure outweigh the public's interest in openness. *See Van Waeyenberghe*, 990 F.2d at 848 & n.4 (refusing to assign a particular weight to the presumptive right of access); *Belo Broadcasting Corp.*, 654 F.2d at 434 (presumption is merely one of the interests that that may bow before good reasons to justify denial of access); *see also Appelbaum*, 707 F.3d at 293 n.12 (rejecting contention that interest in continued secrecy must "heavily outweigh" the common law presumption of access).

In making this determination, some reviewing courts consider the degree to which the subject matter is traditionally considered private rather than public. *E.g., United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("*Amodeo II*"). Others consider factors such as whether the records are sought for improper purposes, such as promoting scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records. *See Appelbaum*, 707 F.3d at 293.

Here, Dow Jones' claim that a common law right of access impels the unsealing of the orders and application materials is unpersuasive, because countervailing interests outweigh any common law presumption of access. Dow Jones bases its contention on its speculation that, because the instant section 2703(d) matter has been "closed" on the docket, it is "unlikely that

the case involves an active, ongoing investigation, and even if it does, any interest in confidentiality has likely waned." (Dow Jones motion at 10.) Dow Jones' speculation is off-target. First, the criminal investigation underlying the United States' section 2703(d) request in this matter is still ongoing. (For additional details, this Court should refer to the United States' sealed appendix, filed contemporaneously with this response.) The common law presumption of access does not create a right to materials in an ongoing investigation; indeed, the existence of an ongoing investigation likely carries the greatest weight of any factor to be considered by a reviewing court, even including public access. *Cf. In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d at 894 (sealing almost always necessary to preserve the integrity of an ongoing criminal investigation); *accord Appelbaum*, 707 F.3d at 293 (government's interest in maintaining the secrecy of ongoing investigation, preventing potential subjects from being tipped off, or altering behavior to thwart investigation, outweighed interest in access).[8] Ongoing investigations should be kept secret for a reason – because that secrecy is necessary to protect the investigative process. *In re Macon Tel. Publishing Co.*, 900 F. Supp. 489, 492 (M.D. Ga. 1995) ("The very nature of … investigative proceedings … is secretive. … The court refuses to find the existence of a right that would in some circumstances possibly destroy institutions (such as the grand jury and warrant issuance processes) so valuable and necessary to society."). Section 2703(d) applications and orders should be kept secret because they reveal targets of the investigation, identify potential witnesses and victims, and could allow subjects of the investigation to frustrate the aims of the order by destroying evidence.

---

[8] The existence of recent public discourse concerning methods used to detect, investigate, and prosecute criminal suspects (*see* Dow Jones motion at 3) does not suggest a contrary result. Public interest does not beget a right of public access to such information, and the integrity of a particular criminal investigation does not lose its importance merely because some members of the public may be engaging in a general discussion of some investigative methods. *Cf. Appelbaum*, 707 F.3d at 294 (public interest in high-profile cases does not justify public access to documents in those cases, even in cases as important as the Oklahoma City bombing and the 9/11 attacks).

Second, regardless of whether the criminal investigation giving rise to the section 2703(d) matter were still ongoing, a reviewing Court should also consider the potential effect of disclosure on law enforcement interests. Officials with law enforcement responsibilities often rely heavily upon the voluntary cooperation of persons who may want or need confidentiality; such cooperation also promotes judicial efficiency, because it eliminates the need for use of compulsory process to obtain information. Law enforcement could lose that valuable cooperation if confidentiality could not be assured. Such a danger need not exist with regard to the cooperation of any witness in this particular case – simply the specter of a court order permitting the disclosure of section 2703(d) material, especially over the government's objection, could chill the prospect of cooperation by other potential witnesses in future cases. This Court should therefore weigh the potential for damage to obtaining future cooperation against the presumption of access.

Secrecy in section 2703(d) actions is therefore hardly "troubling" (*see* Dow Jones motion at 3) – to the contrary, not only is it envisioned by Congress but, as discussed above, it is also necessary for the integrity of the criminal investigation. That secrecy is also undoubtedly comforting to those who may have been investigated but against whom no charges are ultimately filed, or who might be witnesses or victims of crimes: these people's privacy interests are rightly protected.

Third, regardless of whether the investigation were still ongoing, the privacy and reputational interests of the subjects of the criminal investigations, witnesses in those investigations, or the victims of crimes under investigation, would justify the continued sealing of the documents. One of the SCA's two essential purposes is to protect the privacy interests of individuals in their stored electronic communications. Where those section 2703(d) applications

and orders indicate the identity or other personal identifying information of an individual who has not been charged in a criminal case – be it a target of the investigation, a witness, or a victim – that individual possesses a reasonable privacy interest in not having his or her identifying information disclosed with the fact and subject matter of the investigation. *Cf. Frankenberry v. FBI*, 2014 U.S. App. LEXIS 9171 at *3 (3d Cir. May 15, 2014) (unpublished), *quoting Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1058 (3d Cir. 1995) (in the context of a FOIA case, "[i]ndividuals involved in a criminal investigation possess a privacy interest 'in not having their names revealed in connection with disclosure of the fact and subject matter of the investigation.'"); *see also Amodeo II*, 71 F.3d at 1048-49 ("Unlimited access to every item turned up in the course of litigation would be unthinkable. Reputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information."). These individuals, if their identities or personally identifying information were disclosed, could become the subject of embarrassment, harassment, or, in some cases, physical danger.[9]

Fourth, although the development of, and technology surrounding, some methods of electronic surveillance may have received some publicity over time, there is ongoing value in the continued privacy of investigators' decisions as to which methods to employ in certain types of criminal investigations, at what times, and in what quantities (i.e., how many section 2703(d) actions to bring in a particular investigation). Because the unsealing of records could compromise the sensitive decision-making process underlying the choice and timing of investigative techniques, a reviewing Court should consider whether this interest, especially

---

[9] There can exist acceptable gradations within this range of privacy interests. One could readily conclude, for example, that the privacy interest of a convicted target of a concluded criminal investigation merits less privacy consideration than an innocent victim, a cooperating witness, or even an uncharged target.

when considered in conjunction with the other interests discussed above, outweighs any common law presumption of access.[10]

### 4. There is no First Amendment presumption of access in this case.

Although Dow Jones primarily relies on its claim that the common law justifies a granting of access (Dow Jones motion at 9-10), it asserts alternatively that the First Amendment also requires access. (Dow Jones motion at 10-13.) The essence of Dow Jones' argument is that because search warrant materials are made public after their execution and the conclusion of an investigation, so too should section 2703(d) orders be made public. Dow Jones' analogy is an inapt one, and its First Amendment argument fails.

The Supreme Court has held that the press and general public have a constitutional right of access to criminal trials. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). This right serves a vital function in our government: "The presumption of access is based on the need for federal courts, although independent – indeed, particularly because they are independent – to have a measure of accountability and for the public to have confidence in the administration of justice. *Amodeo II*, 71 F.3d at 1048. The Supreme Court has subsequently extended the *Globe Newspaper* rationale to apply the First Amendment right of access to certain other criminal proceedings. In *Press-Enterprise Co. v. Superior Court of Cal.*, 478 U.S. 1, 8-9 (1986), the court explained that in determining whether a First Amendment right of access attaches to a particular proceeding or

---

[10] Other factors can also weigh against disclosure of the materials sought. For example, disclosure of the materials would not aid the public in the understanding of a significant historical event; this is especially true if the investigation is still ongoing. *Cf. In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Additionally, unsealing section 2703(d) documents in an ongoing case could undercut the important public interest in the prompt investigation and prosecution of crimes, especially if disclosure resulted in real-time interference with and challenges to lawful investigative techniques. *See Bloate v. United States*, 559 U.S. 196, 211 (2010) (noting "public interest in the swift administration of justice"); *United States v. Dionisio*, 410 U.S. 1, 17 (1973) (saddling grand jury with mini-trials and preliminary showings would impede its investigation and frustrate the public's interest in the fair and expeditious administration of criminal laws).

filing, courts should consider (i) whether the proceeding or filing at issue has both "historically been open to the press and general public" (the "experience" test) and (ii) whether "public access plays a significant positive role in the functioning of the particular process in question" (the "logic" test). *See Hearst Newspapers, L.L.C. v. Cardenas-Guillen*, 641 F.3d 168, 175 (5th Cir. 2011). Contrary to its suggestion (Dow Jones motion at 11 n.11), Dow Jones must meet both tests. *Hearst Newspapers, L.L.C.* described the *Press-Enterprise* test as a "two-part test," and used the conjunction "and" in describing the analysis of whether a First Amendment right of access existed. 641 F.3d at 175.

In applying *Press-Enterprise*'s two-prong test, the Fifth Circuit has held that the First Amendment right of access applies to sentencing hearings (*Hearst Newspapers, L.L.C.*, 641 F.3d at 181) and pretrial bond reduction hearings (*Chagra*, 701 F.2d at 363-64). The court has also acknowledged other circuits' recognition of the right of access at other stages of criminal prosecutions, including suppression hearings, entrapment hearings, *voir dire*, guilty plea hearings, and trials. *Hearst Newspapers, L.L.C.*, 641 F.3d at 175-76 (collecting cases). Even so, the Fifth Circuit has found limits to the First Amendment right of access to proceedings. *E.g., Edwards*, 823 F.2d at 116-17 (First Amendment right of access does not attach to mid-trial questioning of jurors regarding potential misconduct).

All of these authorities, however, deal with access to *proceedings*, not to court records and documents. Neither the Supreme Court nor the Fifth Circuit have directly addressed whether the First Amendment right of access extends to court records and documents. In the absence of any such controlling authority, at least one district court in this circuit has elected, when considering a request for access to judicial records, to apply the experience and logic tests applicable to proceedings. *See Sullo & Babbitt, PLLC v. Abbott*, 2012 U.S. Dist. LEXIS 95223

at *39-*42 (N.D. Tex. July 10, 2012) (unpublished) (Fitzwater, C.J.).  In any event, Dow Jones'
request fails both tests.

### a. Dow Jones cannot meet the "experience test."

Dow Jones cannot satisfy the experience test for First Amendment access.  Dow Jones
attempts to liken the 2703(d) order process to that of search warrants (Dow Jones motion at 11),
but it cannot escape the fact that the Stored Communications Act was enacted only in 1986.
There is simply no historical tradition of access for section 2703(d) orders: they are a creation of
recent statute.  *Cf. Appelbaum*, 707 F.3d at 291 (appellant conceded that there is no long tradition
of access for section 2703(d) orders).  In stark contrast to any tradition of openness, section
2703(d) applications are typically submitted *ex parte* by the government and are evaluated by the
court *in camera*.  In addition, the statute specifically authorizes the government to obtain an
order denying notice to anyone, including the public, about the existence of a section 2703(d)
order and application that does not seek the content of any communications.  18 U.S.C. §
2705(b).  These factors alone are sufficient to defeat Dow Jones' argument with regard to the
experience test.  *Cf. Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63-64 (4th Cir. 1989); *see also In
re Application of The N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d
401, 410 (2d Cir. 2009) (no First Amendment right of access to wiretap materials, where
applications were created by statute and statute also had protective scheme); *In re Motions of
Dow Jones & Co.*, 142 F.3d at 502-03 (no First Amendment right to access proceedings that are
ancillary to a grand jury investigation, because they lack a tradition of openness).[11]

Apparently recognizing the futility of its main argument under the experience prong,
Dow Jones next argues that section 2703(d) orders are judicial orders, and that the history of

---

[11]  Dow Jones' search warrant analogy is also unavailing because, as discussed in section C.2.b above, the structure
and intent of the search warrant process is different from that of section 2703(d) orders.

access to judicial records and documents therefore justifies the finding of a First Amendment presumption of access. (Dow Jones motion at 11, citing *In re New York Times Co.*, 585 F. Supp. 2d 83, 89 (D.D.C. 2008).) This argument was rejected by the Fourth Circuit in *Appelbaum*, *see* 707 F.3d at 291 n.8, and for good reason: it is simply too broad. Unlike the common law presumption, there is no First Amendment right of access to *all* judicial records and documents; rather, as the Fourth Circuit has held, that right of access extends only to "particular" judicial records and documents. *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004); *accord United States v. Bus. of the Custer Battlefield Museum*, 658 F.3d at 1196 (declining to decide whether the First Amendment right of access applies to search warrant materials after the conclusion of an investigation). The reasoning behind this distinction is sound: the common law presumption of access to all judicial records can be rebutted if the public's right of access is outweighed by competing interests, but the public's right of access to the narrower class of judicial records covered by the First Amendment presumption can be overcome only with a showing of a narrowly tailored, compelling government interest. *See Appelbaum*, 707 F.3d at 290. Dow Jones recognizes this distinction earlier in its motion, acknowledging that the First Amendment right to judicial records is narrower and that it applies only to particular types of records. (Dow Jones motion at 8.)

Because the *Press-Enterprise* test is a two-part test, Dow Jones' failure to satisfy the experience test is fatal to its claim that it possesses a First Amendment right of access to the documents in this section 2703(d) matter. This Court should therefore deny Dow Jones' bid for disclosure of the documents.

### b. Dow Jones cannot meet the "logic test," either.

Even assuming for the sake of argument that Dow Jones could satisfy the experience test, or that the *Press-Enterprise* test was somehow disjunctive, Dow Jones is still entitled to no relief, because it cannot satisfy the "logic" test for First Amendment access. The logic test asks whether public access plays a significant role in the process in question. *See Hearst Newspapers, L.L.C.*, 641 F.3d at 175. The section 2703(d) process is an investigative one, and openness of the section 2703(d) process does not play a significant role in the functioning of investigations. To the contrary, openness really plays no role at all: the proceedings consist of the issuance of and compliance with section 2703(d) orders, are *ex parte* in nature, and occur at the investigative phase of an inquiry which may or may not ripen into a grand jury indictment. The statutory mechanism even permits the government to request a gag order to prevent recipients of section 2703(d) orders from disclosing the existence of orders and investigations. This pre-indictment investigative process, "an unusual setting where privacy and secrecy are the norm," is not amenable to the practices and procedures employed in connection with other judicial proceedings. *Cf. In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000) (district court did not abuse its discretion by declining to promulgate a general rule requiring a public docket for all grand jury ancillary proceedings); *see also Appelbaum*, 707 F.3d at 292.

With respect to the logic test, then, section 2703(d) proceedings are more analogous to grand jury proceedings, for which, traditionally, there is no significant role for public access. In fact, section 2703(d) proceedings are a "step removed from grand jury proceedings, and are perhaps even more sacrosanct." *Appelbaum*, 707 F.3d at 292. Because secrecy is necessary for the proper functioning of criminal investigation at the section 2703(d) phase, openness would frustrate the government's operations. This Court should therefore conclude that there is no

presumptive right of access to the documents under the First Amendment logic test, and should reject Dow Jones' bid to unseal the documents on that ground.

Dow Jones hypothesizes no persuasive way in which openness furthers the section 2703(d) process. Rather, Dow Jones simply recites the benefits of openness generally, and repeats its incorrect premise that, because the section 2703(d) process is allegedly similar to the search warrant process, the First Amendment right of access should apply to section 2703(d) materials as well. (Dow Jones motion at 11-12.)[12] The theoretical benefit of openness, however, is not sufficient to merit a finding that the logic test has been satisfied:

> Appellants essentially argue that any time self-governance or the integrity of the criminal fact-finding process may be served by opening a judicial proceeding and its documents, the First Amendment mandates opening them to the public. Were we to accept this argument, few, if any, judicial proceedings would remain closed. Every judicial proceeding, indeed every governmental process, arguably benefits from public scrutiny to some degree, in that openness leads to a better-informed citizenry and tends to deter government officials from abusing the powers of government. However, complete openness would undermine important values that are served by keeping some proceedings closed to the public. Openness may, for example, frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair administration of justice.

*Times Mirror Co.*, 873 F.2d at 1213; *see also Baltimore Sun Co.*, 886 F.2d at 64 (citing *Times Mirror* in denying First Amendment right of access to search warrant materials). Moreover, any similarity of the section 2703(d) process to that of search warrants only solidifies the conclusion that openness plays no role in either process: as the Supreme Court has noted more than once, search warrant proceedings are not open. *See Franks v. Delaware*, 438 U.S. 154, 169 (1978) (proceeding for issuing a search warrant is necessarily *ex parte*); *United States v. United States*

---

[12] Dow Jones cites *Appelbaum* for this proposition, but *Appelbaum* says that *unexecuted* search warrants are the closest analogy to a section 2703(d) order, adding for good measure that there is no history of access to such documents. 707 F.3d at 291 n.9. In any case, this part of the *Appelbaum* opinion was discussing the experience test, not the logic test.

*Dist. Court*, 407 U.S. 297, 321 (1972) (a "warrant application involves no public or adversary proceeding").

### 5. Even if the First Amendment presumption of access does apply, compelling interests justify continued nondisclosure.

Should this Court disagree, and conclude that a First Amendment presumption of access does apply, the United States urges that compelling interests justify the continued sealing of the documents. First, with regard to ongoing investigations, secrecy is of paramount importance: that secrecy is necessary to protect the investigative process. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d at 574 (ongoing investigation constitutes a compelling interest). Applications for section 2703(d) orders should be kept secret because they identify witnesses, reveal targets of investigations, and could allow subjects of investigations to frustrate the aims of the order by destroying evidence. *Cf. Baltimore Sun Co.*, 886 F.2d at 64. A court may deny access to records if the records become a vehicle for improper purposes. *Holy Land*, 624 F.3d at 689 (citing *Nixon*, 435 U.S. at 597-98). In this case, the publication of unsealed records could provide the vehicle for use for the improper purposes contemplated by *Holy Land*. This Court should therefore find that this danger constitutes a compelling reason for continued secrecy.

Additionally, as discussed above, the privacy interests of those individuals who are the subjects of criminal investigations could be irreparably damaged if knowledge of their status as subjects became known. In those cases where a privacy right is violated, courts have found irreparable injury. *E.g., Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 332 (5th

Cir. 1981) (impairment of constitutional right to privacy mandates a finding of irreparable harm).[13]

### 6. If this Court determines that the materials should be unsealed, the United States requests the opportunity to seek appropriate redactions.

Should this Court disagree with the United States' arguments that the section 2703(d) materials should remain sealed, harm to important interests will likely occur, as discussed above. Nevertheless, should this Court so rule, the United States respectfully requests the opportunity to request redactions to the documents, in an effort to minimize the damage that will be caused by permitting disclosure.

### D. There is no need for this Court to amend the docket sheet in this matter.

Finally, Dow Jones asks that this Court more precisely identify the documents on the docket sheet in this matter, contending that the docket is so opaque as to render the public's right of access illusory. (Dow Jones motion at 13-14.) This Court should deny that request as well.

Where the public has the right of access to a proceeding or document, there is a procedural aspect to that right which requires courts to provide notice of a decision to close the proceeding or seal the documents. *See, e.g., Hearst Newspapers, L.L.C.*, 641 F.3d at 182-84 (notice required before closure of courtroom). But neither the common law nor the First Amendment provide for a right of access to the documents in this case, and so no statute or court rule requires the individualized docketing of those documents.

Because this matter is properly sealed, no legitimate purpose would be served if individual sealed documents were identified on the public record. Where no right of access to the materials at issue exists, there is no legal basis for requiring an itemized public docket. *See Globe Newspapers v. Pokaski*, 868 F.2d 497, 509 (1st Cir. 1989) (the "First Amendment attaches

---

[13] The United States also re-urges the countervailing interests discussed in Section C.3 as constituting compelling reasons for nondisclosure.

only to those records connected with proceedings about which the public has a right to know.").

Accordingly, courts have not required itemized docketing of records to which the public has no

right of access. *See In re Motion of Dow Jones & Co.*, 142 F.3d at 504 (grand jury records); *see*

*also Connolly*, 321 F.3d at 189 (Criminal Justice Act appointment records).[14]

In the context of section 2703(d) orders, at least one circuit has flatly rejected a claim

virtually identical to that raised by Dow Jones here. In *Appelbaum*, the Fourth Circuit noted that

it had never held that public docketing of pre-indictment investigative matters such as section

2703(d) orders, pen registers, and wiretaps, was required. The court "refuse[d] to venture into

these uncharted waters, and as such, … refrain[ed] from requiring district courts to publicly

docket each matter in the § 2703(d) context." *Appelbaum*, 707 F.3d at 294.

This Court should find likewise. Here, because the public has no right of access to this

section 2703(d) proceeding, there is no requirement that this Court itemize the docket with

further particularity. This Court should therefore reject Dow Jones' request.

**E.  A possible method of analysis by reviewing courts, if a common law right of access exists.**

In an earlier order in this matter, Senior Judge Head remarked that the issues raised by

Dow Jones in its motion will have influence across the Southern District of Texas. Because the

arguments presented by Dow Jones in this matter are capable of repetition – indeed, they have

already been repeated in 14 other cases in this Division alone – the United States now offers a

methodology by which this Court and others might wish to conduct the balancing test when

presented with requests for access based on a claimed common law presumption of access. The

United States does not abandon its contentions, above, that no such common law presumption of

---

[14]   In fact, there are numerous types of judicial proceedings that are sealed and not docketed, such as letters rogatory and orders appointing commissioners. Tim Reagan and George Cort, *Sealed Cases in the Federal Courts* ("*Sealed Cases*") 23-25 (Fed. Judicial Ctr. 2009). For instance, subpoenas are not docketed at all unless a motion to quash is filed, despite the fact that grand jury subpoenas are issued by the court. *See Brown v. United States*, 359 U.S. 41, 49 (1959), *overruled on other grounds by Harris v. United States*, 382 U.S. 162 (1965).

access exists, but merely offers a potential guide for courts' use, should they find that a common law presumption of access exists.

First, a reviewing court should look to the status of the investigation underlying the section 2703(d) materials. If the matter is ongoing, the court should normally find that the interest in protecting the integrity of the investigation outweighs any interest in public access, and should conclude its analysis by declining to grant public access. *Cf. In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d at 894 (sealing almost always necessary to preserve the integrity of an ongoing criminal investigation). If in doubt as to whether a matter is ongoing, the court could certainly request an *ex parte* update from the United States as to the status of the matter, including the expected additional time that might be required before the matter will be concluded.

If the matter is concluded, however, the court should inquire further to determine whether other factors in the particular case, taken alone or together, outweigh the interest in public access. These other factors include those discussed above, and may well include others. If the factors counseling secrecy do not outweigh the presumption of access, then the court should grant access to the materials, but should afford the United States the opportunity to seek redaction of those materials – again, in the interest of protecting the legitimate privacy interests of those whose communications records are at issue and safeguarding law enforcement's legitimate interests in the integrity of their strategies, methods, and techniques.

Finally, if the court declines to grant access to the materials, it should leave the docket sheet undisturbed. If the court grants access to the materials, it should carefully consider what alterations to the docket sheet are appropriate. The docket sheet is intended to be a roadmap of the proceedings, *see Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 95 (2d Cir. 2004), but as

with the section 2703(d) materials themselves, the court should remain mindful of the strong privacy and law enforcement interests that are also entwined in the matter.  It should be sufficient for the court, if it grants access to the materials, to merely state the general nature of the document that is in the record, without unnecessary elaboration.  The United States agrees with Dow Jones (*see* Dow Jones motion at 1, 13-14) that a general description like "Sealed Search Warrant Application" or "Sealed Order Denying Search Warrant Application" could be appropriate.

By completing these steps, a reviewing court which finds a common law presumption of access will likely succeed in balancing the public's interest in access with the affected individual's interest in privacy and the government's interest in appropriate law enforcement.

**V**

**CONCLUSION**

For the reasons stated above, this Court should deny Dow Jones' motion. The documents

in this case should remain sealed, and the docket sheet should remain unchanged.

Respectfully submitted,

KENNETH MAGIDSON
United States Attorney

By:     **s/ Mitchel Neurock**
MITCHEL NEUROCK
Executive Assistant United States Attorney
Texas Bar Number 00784672
S.D. Texas Bar Number 31513
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 567-9710
(713) 718-3300 (fax)
mitchel.neurock@usdoj.gov

DATE: August 1, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that this response was served on counsel for movants by electronic filing on August 1, 2014.

**s/ Mitchel Neurock**
MITCHEL NEUROCK