UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| In re Sealed Matter | § § § § § § | NO. 2:10-mc-00022 |

**DOW JONES & COMPANY, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO INTERVENE AND TO UNSEAL COURT RECORDS**

Although the Government's Response to Dow Jones's Motion to Unseal in this case pays lip service to "the seriousness of the issues raised by Dow Jones," Resp. at 1, the Government's analysis of these issues does not reflect a proper appreciation of the public's rights of access that apply to these judicial records or the showing necessary to overcome these rights under the common law and First Amendment.

Like search warrants, applications and orders under 18 U.S.C. § 2703(d) should be presumptively open to the public unless the investigation is active and has not yet resulted in an indictments. Outside that narrow context, any compelling law-enforcement and privacy interest can be protected through limited redactions. But the Government's Response appears designed to avoid the careful review required by the common law and the First Amendment. The Government's insistence that the public has no right of access to the judicial records at issue is based on a distorted reading of the Stored Communications Act ("SCA") and an unpersuasive attempt to fight the analogy between search warrants and Section 2703(d) orders. Moreover, its suggestion that compelling interests nonetheless require the full sealing of these cases—even

several years after they have been administratively closed—lacks credibility. The Government's proffered reasons for continued sealing are themselves sealed and therefore impossible for Dow Jones to evaluate. But it seems highly unlikely that Dow Jones just happened to file its motions in cases that involve investigations that are several years old yet still "ongoing," and that involve such uniquely sensitive information that, despite the strong presumption in favor of openness, the public cannot even know what is being hidden from it.

It is now in the Court's hands to conduct the careful review that the Government declined to perform. In doing so, the Court should keep in mind the important interests of the public in open access to judicial records and the diminishing need for confidentiality in investigations that are now several years old. Dow Jones is confident that a truly serious analysis would result in the unsealing of the docket and (at least) *most* of the records in this case.

## ARGUMENT

Although the Government quibbles over the procedural propriety of Dow Jones's intervention in this case, it agrees that Dow Jones has the right to request access to the Court's records. The Court therefore must determine what right of access exists and the proper standard for determining whether countervailing interests nevertheless require continued sealing. In applying this standard, Dow Jones is at a distinct disadvantage, as the records and the Government's asserted grounds for sealing them remain under seal. But based on the information about these cases that is already public, it does not appear that the broad, permanent sealing advocated by the Government can be justified.

I. **Dow Jones's Intervention in this Case Is Proper.**

Although the Government agrees that the Court should reach the merits of Dow Jones's

Motion to Unseal, it contends that "intervention" by Dow Jones is not the proper procedural vehicle. According to the Government, the Court should consider Dow Jones's motion as a "request for access," not an intervention. Resp. at 5. Although this Court's analysis would be the same regardless of whether Dow Jones's Motion is considered an "intervention" or a "request for access," it is worth noting that the Government's argument on this point ignores well-established precedent confirming that "[a] motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper." *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008); *see also United States v. Fretz*, No. 7:02–CR–67–1–F, 2012 WL 1655412 (E.D.N.C. May 10, 2012) ("[I]t is well-settled that a motion to intervene is appropriate to assert the public's right of access to criminal proceedings."); *United States v. Moussaoui*, 65 F. App'x. 881, 884, 2003 WL 1889018 (4th Cir. 2003) (granting motion to intervene by media organizations seeking to unseal documents and attend oral argument).

As support for its argument, the Government repeats an observation by one federal district court in a case involving a *pro se* intervenor, in which the district court stated that the Fifth Circuit "has indicated certain misgivings regarding the procedural propriety of such self-described 'motions to intervene.'" *United States v. Ketner*, 566 F. Supp. 2d 568, 572-73 (W.D. Tex. 2008). But the case the district court and the Government relies on, *United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983), expresses no such "misgivings." Rather, *Chagra* merely notes that courts have allowed for *appellate review* of closure and sealing orders through various procedures, including direct appeal after a media organization's proper intervention. *See id.* at 358-60. Accordingly, the Government's suggestion that the Fifth Circuit disapproves of "interventions" by the news media in access cases like this one finds no support in any actual

Fifth Circuit case. *Cf. United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (recognizing journalist's right to intervene to seek access to court records).[1] Thus, there is no reason for this Court to depart from the well-established principle that "[a] motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper." *Aref*, 533 F.3d at 81.

## II. Dow Jones Has a Common Law Right of Access to these Records.

The Government's Response barely mentions the fact that Magistrate Judge Smith of this Court has already held that Section 2703(d) applications and orders are covered by the common law right of access. *See In re Sealing and Non-Disclosure of Pen/Trap 2703(d) Orders ("In re Sealing")*, 562 F. Supp.2d 876, 891-92 (S.D. Tex. 2008) (Smith, M.J.). In reaching this holding, Magistrate Judge Smith likened Section 2703(d) records to search warrants and applications, noting that several courts have recognized a common law right of access to search warrant records, especially post-indictment. *See id.* ("While no case directly on point has been found, perhaps the most analogous cases are those dealing with sealed search warrants."); *cf. Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir. 1989) (common law right of access applies to search warrant records); *In re Search Warrant of Secretarial Area Outside Office of Gunn,* 855 F.2d 569, 573 (8th Cir. 1988) (same). The Fourth Circuit has also held that Section 2703(d) orders and applications are subject to the common law right of access. *In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d) ("Appelbaum"),* 707 F.3d 283, 290 (4th Cir. 2013) (finding Section 2703 motions and orders are judicial records). Like Magistrate

---

[1] The Government's reliance on cases rejecting interventions in criminal proceedings for the purpose of challenging aspects of the proceeding other than public and press access (such as sentencing) is inapposite. Dow Jones's only concern in this case is in the openness of court records.

4

Judge Smith, the Fourth Circuit relied on an analogy between Section 2703(d) records and search warrant records. *Id.* (citing *Goetz*, 886 F.2d at 63-64).

The Government's Response fails to cite any case in which a court has held that Section 2703(d) records are *not* subject to the common law right of access. Unable to rely on any *holdings* by any federal courts in support of its argument, the Government relies extensively on the opinion of a single concurring judge in *Appelbaum*, who disagreed with the majority's holding that the common law right of access applies to Section 2703(d) records. *See* Resp. at 14-16. Like that lone concurring judge, the Government's argument is premised on a rejection of the search-warrant analogy that Magistrate Judge Smith and the *Appelbaum* majority found compelling.[2] *Id.* at 20. In short, the Government's argument is that, because there are some differences between search warrants and Section 2703(d) orders, any analogy between them is "simply not useful" for determining the scope of public access to Section 2703(d) records.[3] *Id.*

The problem with this argument is that it is not enough for the Government merely to identify differences between search warrants and Section 2703(d) orders. Those differences

---

[2] The Government points out that neither the U.S. Supreme Court nor the Fifth Circuit "has definitively addressed the scope of a common law right of access to search warrant materials." Resp. at 18. This is correct. But courts have uniformly held that the common law right of access applies to search warrant materials post-indictment. *See, e.g.*, *United States v. Bus. of Custer Battlefield Museum and Store,* 658 F.3d 1188, 1194 (9th Cir. 2011). The only cases cited by the Government involve access to search warrant materials at the pre-indictment stage, and on that issue courts are split. Resp. at 18 (citing cases on both sides of split).

[3] For the purposes of this Reply, Dow Jones will refer to Section 2703(d) orders and applications, as well as the dockets in these cases, as "records." Dow Jones notes, however, that this Court has recognized that judicial orders are in the "top drawer of judicial records," which "is hardly ever closed to the public." *In re Sealing*, 562 F. Supp. 2d at 891; *see also Appelbaum*, 707 F.3d at 290 ("Although we have never explicitly defined "judicial records," it is commonsensical that judicially authored or created documents are judicial records."). Applications for Section 2703(d) orders are "'judicial records' because they were filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders." *Appelbaum*, 707 F.3d at 291.

must be relevant to the issue of whether the common law right of access applies. This is where the Government's argument breaks down. If anything, the "differences" it cites between search warrants and Section 2703(d) orders—*i.e.*, the differences between the Fourth Amendment and the SCA—suggest that the right of access is actually *stronger* as to Section 2703(d) records than to search-warrant records.

The Government begins its argument on this point with the observation that it "is useful to review the SCA's structure and the reasons for its enactment." Resp. at 8. Citing a law review article by Professor Orin Kerr, the Government asserts that the SCA was enacted in 1986 as a legislative response to a perceived gap in privacy protections under then-current Fourth Amendment jurisprudence, under which subscribers of electronic communication services did not have a legally protectable privacy interest in their non-content subscriber records. *See* Response at 8-9 (citing Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 GEO.WASH. L. REV. 1208, 1212 (2004)). According to the Government, the SCA was intended to remedy this problem by providing a "Fourth Amendment-like" statutory framework—essentially a statutory "plug in the gap of Fourth Amendment privacy protections." S*ee* Resp. at 9.

Needless to say, this is a curious way for the Government to begin its attack on the analogy between search warrants and Section 2703(d) orders. If the SCA is "Fourth Amendment-like," then why should the common law right of access that applies to search-warrant records not also apply to the Section 2703(d) records? The Government offers two arguments in response to this obvious question: (1) presumptive openness would violate the "enhanced" individual privacy interests protected by the SCA, and (2) the SCA reflects a

6

legislative abrogation of the common law right of access. Neither of these arguments is persuasive.

The Government's reliance on the privacy interests of cell phone subscribers is particularly misplaced. If the SCA was designed to protect privacy in a "Fourth Amendment-like" way, the need for public scrutiny applies the same to these records as to search warrant records. *See Gunn*, 855 F.2d at 573 ("[P]ublic access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct."). For these same reasons, the public must be allowed to scrutinize these sorts of judicial records.

Furthermore, as the Government notes, the standard for obtaining a Section 2703(d) order for the types of information at issue in this case is *lower* than the probable cause standard that applies to search warrants. *See* Resp. at 12. This lower standard clearly reflects Congress's determination that the individual privacy interests protected by the SCA are less substantial than Fourth Amendment-protected privacy interests. Thus, to the extent that the Fourth Amendment and SCA can be distinguished based on the privacy interests protected by them, that distinction justifies more public access, not less.

In fact, the Government's position in this case—that individuals have "enhanced" privacy interests in the information protected by the SCA—contradicts the Government's repeated insistence in other cases that any privacy interests protected by the SCA are negligible. For example, in 2012, the Government argued to the Fifth Circuit that it was not required to get a warrant, and could instead use Section 2703(d), for obtaining historical cell-site records because

the Fourth Amendment did not apply, as "customers have no protected privacy interest in [these] records." *See* Reply Brief of United States, *In re Applications of the United States of America for Historical Cell-Site Data*, No. 11-20884, Doc. 00511807365 (5th Cir. Mar. 30, 2012). Similarly, just one week after it filed its Response in this case in which it argued that "the [SCA's] policy of privacy protection is stronger" than the Fourth Amendment's, Resp. at 19, the Government argued in the Northern District of California that "a person has no reasonable expectation of privacy in historical cell site information." *See* United States Reply Memorandum, *In re Tel. Info. Needed for a Criminal Investigation*, No. 3:14-xr-90532-NC (N.D. Cal. Aug. 8, 2014) (Doc. No. 23).[4] In short, the Government cannot square its argument in this case with the SCA or with its own litigation position when it is required to defend its use of Section 2703(d).

The Government's attempt to discern a legislative intent that Section 2703(d) records be permanently sealed is similarly unconvincing. Had Congress wanted Section 2703(d) applications and orders sealed permanently, it easily could have said so. In fact, the SCA does not automatically provide for *any* sealing of Section 2703 orders; it is silent on the issue of sealing. In contrast, the Pen/Trap Statute, which parallels the SCA in several ways and was enacted alongside the SCA as Title III of the Electronic Communications Privacy Act (the SCA

---

[4] Moreover, any attempt to condition the public's right of access on the application of the Fourth Amendment to the information being sought by the Government ignores the recent developments in this area, which are blurring the lines between what is protected by the Fourth Amendment and what is merely protected by Section 2703(d). For example, this year, the Eleventh Circuit held that Section 2703(d) violated the Fourth Amendment. *See United States v. Davis*, 754 F.3d 1205, 1217 (11th Cir. 2014) (Sentelle, J., sitting by designation); *but see In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600, 612 (5th Cir. 2013) (Section 2703(d) "not categorically unconstitutional"); *cf. Riley v. California*, 134 S. Ct. 2473 (2014) (unanimously holding that the warrantless search and seizure of digital contents of a cell phone during an arrest violates the Fourth Amendment).

is Title II), requires that an order issued under its provisions "be sealed until otherwise ordered by the court." *See* 18 U.S.C. § 3123(d)(1).[5] The absence of a similar provision in the SCA suggests that Congress intended for Section 2703(d) orders to be treated like all other judicial orders, subject to the presumption of access. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

The Government's attempt to justify indefinite sealing by comparing Section 2703(d) records to grand jury records also fails. It is well established that grand jury proceedings are distinct from judicial proceedings. *See United States v. Williams*, 504 U.S. 36, 47 (1992) ("[T]he grand jury is an institution separate from the courts, over whose functioning the courts do not preside . . . ."). Rule 6(e) of the Federal Rules of Criminal Procedure contains specific grand jury secrecy requirements, which are notably absent from Rule 41 governing search warrants. *See Goetz*, 886 F.2d at 63-64. The Government attempts to discern a legislative intent for permanent sealing by citing Section 2705(b), which it describes as "authoriz[ing] . . . the government to obtain an order denying notice to anyone, including the public, about the existence of a section 2703(d) order and application . . . ." Resp. at 29. But the Government ignores the fact that this gag-order provision is only *temporary*. After 90 days, the nondisclosure requirement expires, subject to 90-day extensions only upon a showing by the Government that disclosure will cause one of the following adverse results:

---

[5] The Pen/Trap Statute provides for temporary sealing of orders, but it provides no standards for courts to apply in determining the scope and duration of such sealing and therefore does not abrogate common law principles.

>	(A) endangering the life or physical safety of an individual;
>
>	(B) flight from prosecution;
>
>	(C) destruction of or tampering with evidence;
>
>	(D) intimidation of potential witnesses; or
>
>	(E) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(a)(2). Such a provision hardly equates to permanent sealing by default.

In sum, the Government's argument that the common law right of access does not apply to Section 2703(d) records finds no support in case law or in the SCA. The Court should therefore follow Magistrate Judge Smith's analysis and the majority opinion in the Fourth Circuit's *Appelbaum* case by finding a common law right of access to Section 2703(d) applications and orders, as well as the docket sheets in these cases.

### III. The Government Should Not Be Allowed to Defeat the Presumption of Openness by Overbroad and Unsupported Assertions that Law Enforcement and Individual Privacy Require Blanket Sealing.

Unable to argue convincingly that the common law right of access does not apply to Section 2703(d) records, the Government attempts to obtain the same result by arguing that countervailing law enforcement and privacy interests require that 14 of the 15 cases in which Dow Jones filed motions must remain sealed *in their entirety*. The Government's specific justifications for continued sealing in this case and the 13 others are unknown to Dow Jones because the Government filed them under seal. But based on what little is known about these cases, it does not appear that the Government can support blanket sealing of the records at issue.

The Government's assertion that this and the 13 other cases it desires to keep sealed all involve "ongoing investigations" is difficult to accept, and the Court is certainly not bound by it.

After all, this case has been administratively closed for a significant time. The Government does not state that the case has yet to result in an indictment, or even a plea or conviction. And the possibility that Dow Jones just happened to file motions in 14 cases that were all administratively-closed-yet-still-"ongoing" seems too remote to be true.

Rather, it appears that the Government is taking the position that the investigation at issue here is "ongoing" in the sense that it is somehow tangentially related to a broader investigation. But the Government cannot satisfy its burden with clever semantics. The invocation of an "ongoing investigation" does not have talismanic significance. *See, e.g.*, *Virginia Dept. of State Police v. The Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004) ("[N]ot every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation. Therefore it is not enough simply to assert this general principle without providing specific underlying reasons for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information."). Rather, the Government must identify specific dangers that would result from the premature disclosure of information (*e.g.*, tipping off, destruction of evidence, etc.). *See Baltimore Sun,* 886 F.2d at 66 (government's claimed basis for sealing investigative records cannot be based on "conclusory allegations"; "specificity is required"). For obvious reasons, these concerns are likely less to be compelling where the term "ongoing investigation" is used so loosely. The fact that the Government obtained a Section 2703(d) order for Suspect A's cell phone records *years ago* is unlikely to result in the destruction of evidence by, or tipping off of, Suspect B. After all, Suspect A might already be indicted or in prison, so the fact that law enforcement was investigating Suspect A is hardly news to Suspect B. Moreover, to the extent that there are

legitimate law enforcement interests to protect in other, related ongoing investigations (*e.g.*, the identities of informants, other suspects, etc.), the Court could use limited redactions to preserve the confidentiality of such information, while still unsealing most of the file in this case.

Clearly anticipating this result, the Government asks the Court for "the opportunity to request redactions to the documents, in an effort to minimize the damage that will be caused by permitting disclosure." Resp. at 24. But the time for the Government to propose such redactions has passed. The Court gave the Government *nearly two months* to respond to Dow Jones's motions, so that the Government could conduct a close review of each case file and determine which documents could be unsealed and what redactions were necessary. Clearly, the Government did not conduct such a review. If it had, it would certainly have realized that some of the judicial records it seeks to keep sealed in these 14 cases are already publicly available on Westlaw or through a Google search, such as a *published* opinion in *In re Application for an Order Authorizing Installation and Use of a Pen Register and Trap and Trace Device (In re Stingray)*, 890 F. Supp. 2d 747 (S.D. Tex. 2012) (sealed as Doc. No. 2 in No. 2:12-mj-534). It is well established that documents that have already been made public cannot remain sealed:

> [H]owever confidential it may have been beforehand, subsequent to publication it was confidential no longer. It now resides on the highly accessible databases of Westlaw and Lexis and has apparently been disseminated prominently elsewhere. We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again. The genie is out of the bottle, albeit because of what we consider to be the district court's error. We have not the means to put the genie back.

*Gambale v. Deutsche Bank AG,* 377 F.3d 133, 144 (2d Cir. 2004) (citing *SmithKline Beecham Corp. v. Pentech Pharms., Inc.,* 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (Posner, J., sitting by designation)); *see id.* at 144 n.11 ("This is so when information that is supposed to be

confidential—whether it be settlement terms of a discrimination lawsuit or the secret to making the hydrogen bomb—is publicly disclosed. Once it is public, it necessarily remains public."). The Government's position that even this already-public record cannot be unsealed raises serious questions about the seriousness of the Government's review and the credibility of its protestations of the harm that would befall its "ongoing investigations" and the privacy interests of the users at issue if the document were to be unsealed.[6]

## IV. Dow Jones Has a First Amendment Right of Access to these Judicial Records.

Although the application of the common law right of access and the Government's failure to identify specific, countervailing interests to justify continued sealing provide sufficient grounds for granting Dow Jones's Motion, the First Amendment provides an alternative basis. Contrary to the Government's assertions, the "experience" and "logic" prongs of the First Amendment right of access test are "complementary" particularly where, as here, the judicial process at issue is relatively new. *Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"). Thus, in *Press-Enterprise II*, the Supreme Court held that the First Amendment right attached to certain pretrial proceedings even though they had "no historical counterpart," because the "importance of the … proceeding" was clear. *Id*. at 11 n.3; *see also United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983) ("Because the First Amendment must be interpreted in the context of current values and conditions, the lack of an

---

[6] The Government implies that Dow Jones might use the documents for "improper purposes" and therefore should not have access to these judicial records. *See* Resp. at 33 (citing *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 689 (5th Cir. 2010)). The Fifth Circuit in *Holy Land* cites *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978), for its definition of "improper purposes." *See id.* These include: use "to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case," use "as reservoirs of libelous statements for press consumption," or "as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598 (citations omitted). None of these are remotely at issue here.

13

historic tradition . . . does not bar our recognizing a right of access . . . .") (internal citations omitted). Otherwise, *every* proceeding that did not exist historically could be closed simply because it was unknown at common law.

Nevertheless, the "experience" prong supports unsealing of these documents. Docket sheets, in particular, have a long history of openness. "[D]ocket sheets enjoy a presumption of openness and . . . the public and the media possess a qualified First Amendment right to inspect them." *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 93 (2d Cir. 2004). Docket sheets may only be sealed "upon demonstration that suppression 'is *essential* to preserve higher values and is narrowly tailored to serve that interest.'" *See id.* (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*") (emphasis added); *see also United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (finding "a sealed docket is inconsistent with affording the various interests of the public and the press meaningful access to criminal proceedings").

The Government's argument on the "logic" prong of the First Amendment test also fails to justify continued sealing of the records at issue here. The Government's argument is based on the Fourth Circuit's reasoning in *Appelbaum*, which involved a pre-indictment, active investigation. 707 F.2d. at 291-92. By contrast, this matter has been administratively closed for a long time, and it almost certainly does not involve an active pre-indictment investigation. Any interest in confidentiality has therefore waned with the passage of time. Unsealing records in investigations that are no longer truly "active," is not just consistent with Section 2703(d)—it is *exactly* what Section 2703(d) contemplates. As the Government notes, Section 2705(a) allows the Government to gag the service provider that receives a Section 2703(d) order only for a

limited period of time, and only based on a specific showing of that premature disclosure would cause serious harm to an investigation. *See* 18 U.S.C. § 2705(a)(2). After the gag order has expired, the statute requires that the customer be notified of the request and the reason for any delayed notification. *Id.* § 2705(a)(5). In light of these provisions, the Government's argument that "logic" requires continued sealing of these records years after the investigation has been completed should be rejected.

As the Government concedes, the presumption of openness under the First Amendment right is even stronger than under the common law. *See* Resp. at 33. The Government bears the burden of establishing that continued sealing is warranted, and that burden "increases the more extensive the closure sought." *United States v. Doe*, 63 F.3d 121, 128-29 (2d Cir. 1995). Here, the government argues for indiscriminate, indefinite sealing. As discussed above, there are no indications that the Government has even come close to showing that such secrecy can pass muster under the common law, much less the First Amendment.

## V. The Court Should Adopt a Modified Version of the Government's Proposed Test.

Finally, as the Government notes, Judge Head asked the parties to address the appropriate standard for resolving sealing issues in Section 2703(d) matters, if the Court should find that a right of access applies. The test proposed by the Government, however, suffers from the same flaws as its asserted justification for sealing in these cases. Under the Government's test, sealing would "almost always be necessary" where an investigation is "ongoing," and the status of the investigation would be determined by an *ex parte* report by the Government to the Court. *See* Resp. at 36. Based on the Government's Response, however, it takes little imagination to predict how such a test would be applied: *The Government would simply say that virtually every matter*

15

*involves an "ongoing investigation,"* ending the inquiry at its outset. If this becomes the standard, the common law and constitutional presumption of access would be rendered meaningless; judicial records would be open in theory, but secret in practice.

Rather, Dow Jones proposes that the Court look to Section 2705(a)-(b) for its standard. There is no reason to keep this information hidden from public scrutiny when such information can be disclosed because the Government can no longer satisfy its burden of prohibiting a service provider from informing its customer about the application. Under this standard, sealing of specific portions of the judicial records would be justified only by a specific showing that secrecy is necessary to avoid one of the following adverse results:

> (1) endangering the life or physical safety of an individual;
>
> (2) flight from prosecution;
>
> (3) destruction of or tampering with evidence;
>
> (4) intimidation of potential witnesses; or
>
> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) ("sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim").

This is a standard that has already proven workable for the Government in investigations involving Section 2703(d) orders. Early in the investigation, it will be easier for the Government to make the required showing. But as time passes and the investigation moves on, continued secrecy will be more difficult to justify. This approach is not only in harmony with the SCA, it

comports with the well-established requirement for temporary, narrow sealing in lieu of broad and indefinite sealing. *See, e.g.*, *United States v. McVeigh*, 119 F.3d 806, 815 (10th Cir. 1997) (holding that sealing orders must be narrowly tailored and records must be subject to potential disclosure at later date).

**CONCLUSION**

For reasons set forth in Dow Jones's Motion and this Reply, Dow Jones respectfully moves this Court to intervene in this case and for an order (1) unsealing and making available to the public all documents filed with or by the Court in this case, none of which appear on the electronic docket sheet available via PACER, and (2) requiring that (i) all documents related to this case be identified publicly on the electronic docket sheet and made available via PACER and (ii) if the Court determines that any document or part thereof should remain sealed or redacted, the sealing or redaction be no broader than necessary and the public description of that document be updated to reflect its general nature (*i.e.*, "Sealed Search Warrant Application"; "Sealed Order Denying Search Warrant Application") and provide as much additional information as possible.

Dated: August 27, 2014

Respectfully submitted,

*/s/ Thomas S. Leatherbury*
Thomas S. Leatherbury
Attorney-in-Charge
  State Bar No. 12095275
  S.D. Tex. No. 19358
Telephone:  (214) 220-7792
tleatherbury@velaw.com
Marc A. Fuller
  State Bar No. 24032210
  S.D. Tex. No. 2035080
Telephone:  (214) 220-7881
mfuller@velaw.com
Sean W. Kelly
  State Bar No. 24065550
  S.D. Tex. No. 1569517
Telephone: (214) 220-7720
skelly@velaw.com

VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201-2975

Michael T Murphy
  State Bar No. 24051098
  S.D. Tex. No. 621089
Telephone: (713) 758.2276
mmurphy@velaw.com

VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas  77002-6760

**Attorneys for Dow Jones & Company, Inc.**

**Certificate of Service**

  I hereby certify that on August 27, 2014, a true and correct copy of the foregoing document was served by the notice of electronic filing generated by the Court's CM/ECF system.

> */s/ Thomas S. Leatherbury*
> Thomas S. Leatherbury

US 2879285v.3